## No. XXII.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. OLIVER JONES.

(See Note 56.)

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought by appeal from the District Court of Austin County. It was an action brought in that court by

---

Haney, 1 App. C., sec. 723; Stringfellow v. Thomson, 1 App. C., sec. 1111; Seastrunk v. Pioneer S. & L. Co. (T. C. A.), U. R. C., 1896. It can not be rendered on a contract different from that alleged in petition. Trabue v.

Oliver Jones against Rebecca Cummings, administratrix of John Cunmings, to recover damages on a breach of covenant by the intestate in his lifetime. There was a verdict for the plaintiff, a new trial was asked for and refused by the court, and the defendant appealed. The record contains a statement of facts, certified by the judge below, containing many material facts as to the contract and breach thereof on the part of the intestate, and damages sustained by the plaintiff. But it does not show that the plaintiff proved a demand of the administratrix and her refusal to allow the claim as a debt against the estate. The counsel for the appellee insist that this court ought to presume that a demand was proven, inasmuch as the defendant's counsel below raised no objections to the want of such evidence, nor asked any charge of the judge in relation to it. This position would, we think, be correct, if the record itself did not contain a certificate of the judge that the statement of facts sent up contains all the evidence introduced on the trial below. We are bound to take the record as true. The question then presented to us is: did the plaintiff make out his case in the district court? The statute (volume 4, page 116) directs, that no bearer of a claim against a succession shall commence an action against such succession before presenting such claim to the administrator, etc., for allowance. That if the claim be not allowed by the administrator, the owner thereof, *for the purpose of establishing the same,* may bring his action, etc.

The petition must contain an allegation of such demand and refusal, and it is equally necessary to prove it. This proof in the case before us was not made in the trial below.

The verdict of the jury was not sustained by the evidence and a new trial ought to have been granted.

Let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXIII.

### CAVENAH v. SOMERVILL.

*Appeal from Matagorda County.*

OCHILTREE, JUSTICE.—We learn from the record sent up in this cause that at the fall term, 1840, of the District Court of Matagorda County, Alexander Somervill, the defendant in this action, recovered a judgment against Charles Cavenah, the plaintiff, and one Randal Jones, for the sum of $1000, with interest and costs, upon a note executed by said Cavenah and Jones to one Secrest, and by Secrest indorsed to Somervill. After the issuance of execution on said judgment, Cave-

Stoneum, 20 T., 453; Graves v. Farquhar, 20 T., 455; Johnson v. Stallcup, 41 T., 529. Nor when petition discloses a void or illegal contract. Moseley v. Smith, 21 T., 441; Campbell & Jones v. State Central Bank, 1 App. C., sec.

nah filed his petition, praying that the said judgment be enjoined, alleging the same to have been unjust, illegal and oppressive, for this, that the consideration for which said note was executed was insufficient, fraudulent, illegal and void. He further alleged, that at the trial at law he was prevented from attending court by the severe indisposition of himself and family; that about the time of the court his son-in-law died, so that his presence was imperatively required at home; that he had confided his defense to one Edward L. Homes, Esq., an attorney at law, who died before the trial, and that the attorney to whom his business had been committed, from the fact that he had not an opportunity of conferring with Cavenah, did not introduce the necessary testimony to establish his defense. Upon this petition, his honor, Wm. J. Jones, judge, etc., issued his order for a writ of injunction. Somervill, having been brought into court, demurred to the bill of Cavenah, on the ground that he, the said Cavenah, had appeared by counsel in the suit at law, and by his said counsel had pleaded the general issue, and that the matters and things set forth in his bill were properly cognizable before that tribunal, praying judgment, etc. The demurrer was overruled. Somervill then answered over, denying his knowledge of the consideration given for said note to Secrest, alleging that he had got it in the fair course of trade for a valuable consideration; denying all fraud or collusion in the transaction on his own part, or knowledge of it on the part of others. Upon this issue the cause was submitted to the jury; and the evidence proved that the note sued on had been made for the purpose and was staked on the event of a horse race, which was run between the horses of Secrest and Cavenah, and fairly won by Secrest. A verdict was returned for the plaintiff. We do not deem it necessary to recite any further portion of the testimony or proceeding in this case, saving so much of the charge of the presiding judge as was applicable to such points in the case as we feel it incumbent on us to decide. The court charged the jury that if they believed the note was based upon a gaming transaction, they should find for the plaintiff. The court charged further that at the civil law, horse racing was a species of gambling. The points in this case, presented for the action of this court are these:

1. Did the court below err in refusing to sustain the demurrer to the bill for injunction?

2. Could not Somervill, a bona fide holder, recover on the note?

Without expressly answering the first question, this court will intimate the opinion that it will at all times view with the strictest scrutiny applications for relief on the chancery side of our courts, against judg-

160. When citation is by publication, judgment by default does not dispense with proof of material facts. Doty v. Moore, 16 T., 591.

2 Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Huff v. Folger, Dal., 530; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T.,

ments at law rendered, as was the judgment in this case, after issue joined. Hard cases should not subvert established precedents. The sickness and other misadventures, as set forth in the petition of Cavenah, certainly would have afforded him ground for relief in equity, if it had appeared from the record that he was wholly unrepresented when his case was called for trial. But this was not the case; for his petition admits and the record shows that his attorney pleaded the general issue, and that under this issue the cause was submitted to the jury, and a verdict returned for Somervill, the then plaintiff. It would certainly be a violent presumption to suppose that Cavenah would have employed an attorney and left him in total ignorance of the nature of his defense. We will not say that the court erred in charging the jury that horse racing was such a species of gaming under the civil law as would preclude a recovery on a contract founded thereon. In this case the necessity does not exist for the exercise of that sort of judicial legislation which has been assumed by the courts both in England and many of the United States, by which they undertake to declare what is and what is not contrary to public policy.

Somervill answers, that he is a bona fide holder of the note; and no proof has been introduced to show that there was a scienter on his part, of the nature of the consideration for which the note was given, or the time at which he became the owner. Horse racing not having been declared by the civil law illegal, nor inhibited by statute, the innocent holder is entitled to recover. Chitty on Bills, p. 52. A motion for a continuance before trial, or for a new trial after verdict, would, we have but little doubt, have been sustained by the court who granted the injunction. These were the legitimate resorts of the party; having failed to make use of them, this court is not prepared to say that the plaintiff made such a showing as justified the court below in sustaining the bill for injunction. Illegality of consideration, unless it has been so expressly declared by the Legislature, will be no defense in an action at the suit of a bona fide holder without notice of the illegality, unless he obtained the bill after it became due. Chitty on Bills, 82.

The judgment of the court below is reversed, the injunction dissolved, and a procedendo awarded to the District Court of Matagorda County.

*Reversed.*

Judge Baylor says: "I concur in this opinion so far as the illegality of the injunction is concerned, but give no opinion on the other points involved in the case."

54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Appollos v. Standiforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thompson, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in dif-

## No. XXIV.

### MAIDEN v. FARIS, BROWN AND CALDER.

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—At the March term of the District Court for the County of Brazoria, in the year 1841, a judgment was obtained by the plaintiff against George Brown and Robert S. Calder by default (the action as to Faris having abated by his death). The suit was for damages for failure to comply with the conditions of a bond given by defendants, which bond was the foundation of the action, and the jury assess the damages at $1000. The record is brought into this court by writ of error and the following assigned as error: "that the judgment was rendered against Brown and Calder, when no sufficient service had been made upon Brown, one of the defendants." By reference to the record, we find the sheriff's return upon the writ and petition in these words: "Served George Brown with a copy of this writ and petition, by leaving the same at his house, on the 26th of February, 1839; service accepted by Calder." By reference to volume 1, Statutes of Texas, p. 201, we find that personal service of all process was required to be made on the defendant; and not until the 5th of February, 1840 (4th volume, p. 88), was that law modified or changed. We find that this writ and petition were issued and served previous to the passage of the last law. The defendants neither appeared nor answered, and the judgment went by default.

The defect is fatal, and the cause must be remanded for a new trial.

*Remanded.*

## No. XXV.

### MONROE EDWARDS v. THE REPUBLIC OF TEXAS.

#### (See Note 57.)

*Appeal from Brazoria County.*

OCHILTREE, JUSTICE.—Monroe Edwards, the plaintiff in error, was brought by writ of habeas corpus before the Hon. James W. Robinson, district judge, etc., on the 7th day of May, 1839, and after the hearing of testimony was recognized in the sum of $10,000, conditioned that he should make his appearance before the honorable the District Court for the County of Brazoria, at a court which was held at Brazoria on ———, to answer a charge of forgery. At the fall term, 1839, of the District Court of Brazoria, Edwards having failed to appear, a

ferent States, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State,

forfeiture of his recognizance was taken and a judgment nisi was entered against him; which judgment, without the issuance of scire facias, was made final at the next succeeding term of the court. On the 29th of November, 1842, Edwards, by his attorneys, Harris and Pease, addressed a petition to the Hon. R. E. B. Baylor, judge of the Third District, praying that writs of error and supersedeas might be granted, and that the record of the above stated case might be sent up to the Supreme Court for its adjudication. The prayer of the petitioners was granted.

Without entering upon the consideration of the various errors assigned in this case, we are of opinion that there is a preliminary question which will dispose of it. Should the writ of error have been granted on the petition of the *attorneys* of Edwards?

To fly from the laws and justice of his country has been wisely held to be one of the most heinous offenses of which man can be guilty; and while he continues contumaciously to evade those laws by force, or absence, he is certainly not entitled to any very particular protection. Were a practice like the present to obtain, the administration of justice in criminal cases would soon be little better than a farce. An offender against the laws, who had been so fortunate as to obtain bail, would certainly in every instance try the strength of his recognizance before he would submit his person to the ordeal of justice. If the judgment of forfeiture should be reversed, his securities would be saved harmless, while he himself would escape, "unwhipped of justice," to perpetrate his villainies upon the unfortunate community which had afforded him shelter. The remedy provided by the common law is commensurate with the offense, and though we have eschewed the process of outlawry as being incompatible with the genius of our institutions, yet we think that from the analogy which exists between the cases, we are fully authorized to retain the requisition of the common law, as applicable strictly to applications for writs of error in cases of outlawry, and to pronounce it as the judgment of this court, that in order to obtain a writ of error it is necessary in all criminal cases, on the trial of which his personal appearance is required by law, that the applicant should render himself into custody and come in person to the proper authority to pray it to be allowed him. 1 Chitty Crim. Law, 369.

Writ of error dismissed at the cost of the petitioners.

*Dismissed.*

---

contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermitt, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

## No. XXVI.

EDWARD C. BEAZELY v. SAMUEL STINSON AND THOS. H. WOLF.

*Appeal from Harrison County.*

HEMPHILL, CHIEF JUSTICE.—This cause comes before this court upon an appeal from the District Court of Harrison County. The record shows that it was an action brought by the plaintiff for the recovery of the books, papers, etc., belonging to the office of the clerk of the County Court of Harrison. The plaintiff, Beazely, and the defendant, Wolf, both claim to be clerk; and the defendant pleaded that Pulaski and not Marshall was the legal seat of justice of Harrison County. The judge below overruled the plea as to the seat of justice of the county, and decided that Thomas H. Wolf was legally the clerk of the county court; and from this decision the plaintiff appealed. From the statement of facts which comes up, it appears that one C. K. Andrews was the clerk of the County Court of Harrison County previous to the division of that county into Harrison and the judicial county of Panola by an act of Congress. After such division Andrews became a candidate for and was elected clerk of the County Court of Panola, and Thomas H. Wolf was duly elected clerk of Harrison and entered upon the discharge of his duties; and Pulaski was selected as the seat of justice for Harrison County. Subsequently to these proceedings, the Supreme Court decided that the acts creating judicial counties were unconstitutional. Andrews then resigned his office of clerk of the County Court of Harrison County. The chief justice of Harrison County subsequently issued writs of election for clerk of the county court, when Beazely, having received the highest number of votes, claimed to have been legally elected clerk, gave bonds, etc. After the decision of the Supreme Court before alluded to, the chief justice of Harrison County issued writs of election, under the general law for the removal of county seats (see Acts of Congress, adjourned session of 1838, p. 1), when the town of Marshall received a majority of votes. It also appears from the statement of facts that Marshall is within five miles of the center of the county of Harrison. This court is of the opinion, under all the circumstances, that Andrews having accepted the office of clerk of the County Court of Panola County, an office which was incompatible with the discharge of the duties of his former office of Clerk of Harrison, he thereby vacated the same; and that the election of Wolf was legal, and that he, being the clerk of Harrison County, and in the discharge

---

**Note 43.**—Manlove v. Kinney, p. 493.

Notice of appeal is essential to appellate jurisdiction, and can not be waived. Lockhart v. Lockhart, 1 T., 200; Burr v. Lewis, 6 T., 76; Bennett v. Spillers, 7 T., 600; Hughes v. State, 33 T., 683; Thomas v. Childs, 36 T., 148; Loften v. Nalley, 28 T., 127; Holek v. Varona, 63 T., 65; Smithwick v. Kelly, 79 T., 564; Nickerson v. Nickerson, 65 T., 281; Western Union Telegraph Co. v. O'Keefe, 87 T., 423.

of his duties as such, and there being no vacancy, the election of Beazely was not authorized by law and could not confer the office upon him. The election for the county seat having been held according to law, and the place selected being within five miles of the center, was in compliance with the statute. We are therefore of opinion that the town of Marshall is the legal county seat for Harrison County. The judgment of the court below must therefore be affirmed.

*Affirmed.*


## No. XXVII.

### McILHANEY v. SECREST.

*Appeal from Fort Bend County.*

MORRIS, JUSTICE.—Secrest filed his petition in the District Court of Fort Bend County to enforce the execution of a deed from said McIlhaney to a certain tract of land, the equitable title to which the said Secrest alleged to be in himself. He stated at the close of his petition that defendant was a transient individual; that he was unacquainted with his place of residence, whether in the Republic or not; that ordinary citation might not be able to reach him; he therefore prayed publication of his petition, citing the party defendant to appear, etc. This prayer was granted by the court and publication ordered to be made for sixty days in some public gazette. At the term next succeeding the issuance of this order, a decree was entered in favor of plaintiff. A writ of error has been prayed for and granted to the defendant, and the record is sent up for the revision of this court. The error assigned is, that there was no sufficient or legal notice given to the defendant previous to the rendition of the decree—said judgment or decree having gone by default. By referring to the record we find that no copy of the writ or petition has been issued or served on the defendant. The only notification ever given or attempted to be given by the plaintiff of the pendency of his action was by the publication ordered by the judge to be made in accordance with his prayer. Our statute law nowhere authorizes or legalizes the service of process of any kind than personal service, with the single exception of cases of attachment, where in special cases mentioned it is required to give notice of the pendency of the attachment suit in some public gazette, etc. Texas Laws, vol. 5, p. 187. The first law with regard to the service of process, necessary to notify a party of the pendency of any action, confined it to the person. Texas Laws, vol. 1, p. 201. This was subsequently amended so far as to make serv-

Note 44.—McGill and Wife v. Delaplain, Administrator, etc., p. 493.
   Court can not compel party to take nonsuit. Guest v. Guest, Dal., 394; Thomas v. Hill, 3 T., 270; Sandoval v. Rosser, 86 T., 682, 686.

ice sufficient, where a copy was left at the residence of an individual (Texas Laws, vol. 4, p. 88) ; which amendment has been since repealed, and the law now stands as it *aforetime was.* No authority is given then in our statute law to notify a party defendant of the pendency of an action against him, *in ordinary cases,* by publication. The case under consideration does not come under the provisions of the attachment law, and certainly the averment in his petition, which is not positive, and which does not show that it was impracticable to pursue the ordinary requisites of the law, ought not and did not authorize the court to permit a resort to a method of notification not provided for by our law and exceedingly questionable in any instance. The judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXVIII.

### SAMUEL WHITING v. THOMAS R. MARSTON.

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Marston sued Whiting in the District Court of Harris County at the spring term, 1840, in an action of debt. Whiting filed his plea in abatement on oath to the jurisdiction of the court, averring that he was, at the time of the commencement of the suit and at the trial thereof, not a citizen of Harris County, but a citizen of Travis County. The parties joined issue on the plea, waived a jury, and submitted the case to the presiding judge upon the evidence offered. On an examination of the testimony, we do not feel inclined to disturb the judgment of the court below. Let it be affirmed with damages for delay, etc.

*Affirmed.*

## No. XXIX.

### MICHAEL DE YOUNG v. JOHN T. PATTERSON.

*Appeal from San Augustine.*

JACK, JUSTICE.—This case is submitted upon a motion to dismiss the appeal for the want of jurisdiction. Patterson sued De Young before a magistrate and obtained a judgment for about $75. De Young appealed to the District Court for San Augustine County. The appeal was dismissed from that court, and an appeal from that decision was taken to this court. The statute regulating appeals from justice courts prescribes that the decision of the case in the district court shall be

---

Note 45.—Allcorn, Administrator, etc., v. Sweeny, p. 494.

Court has no power to enter an involuntary nonsuit. Guest v. Guest, Dal., 394; Sandoval v. Rosser, 86 T., 682, 685. Appeal does not lie from judg-

final. We are of opinion that under this law no appeal lies from the district court upon causes brought before magistrates and appealed into the district courts. The motion must be sustained and the appeal dismissed.

*Dismissed.*

Judge Baylor says: "In this case I give no opinion."

## No. XXX.

### WHITING v. BRISCOE AND HARRIS.

(See Note 58.)

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Briscoe and Harris sued Whiting in the District Court of Harris County, in an action of debt, returnable to the fall term, 1839. Whiting pleaded in abatement that he was at the time of suing out the plaintiff's writ a citizen of Bastrop County and not a citizen of the county of Harrisburg, and prayed judgment of the court, that they would not take cognizance, etc. The plaintiffs took issue upon the plea and a jury were impaneled to try the issue. The jury returned the following verdict: "We, the jury, find that Samuel Whiting was a resident of the county of Harris on the 14th October, 1839"— which was the date of the writ or citation in this case. The defendant, Whiting, then pleaded the general issue and submitted the case to the jury, who found a verdict for the plaintiffs and a judgment was rendered accordingly. Whiting appealed.

There were several exceptions taken in the course of the trial below; but inasmuch as they were not of sufficient importance to attract the further attention of the distinguished counsel whose argument has been submitted to us in this case, we will confine our attention to the point which has been brought before us. It is contended by the counsel for the appellant that the finding of the jury did not answer the issue presented by the plea; that although Whiting may have resided in Harrisburg County on the 14th October, 1839, the date of the issuance of the original writ, that there was an alias writ, issued on the 21st April, 1840, upon which he was served and brought into court to answer at the time when he resided in another county; and inasmuch as the statute requires that in all cases not herein excepted the citizen should be sued in the county in which he resides, that it is the place of residence, at the time of the service of the writ, which determines the jurisdiction of the court over his person. This court is of a different opinion. The party instituting the suit ascertained the residence of Whiting, and

---

ment of nonsuit by a justice of the peace on ground that plaintiff failed to appear. Morgan v. Johnson, 4 T., 117.

commenced their suit in accordance with law. If Whiting afterwards, for the purpose of evading the jurisdiction, should have left the county in which the suit was instituted, it certainly could not be expected that the plaintiff should be reduced to the necessity of dismissing his suit, for the purpose of instituting another, when a like occurrence might happen. The residence of the party at the time of the institution of the suit determined the jurisdiction, and in this we unanimously concur. Let the judgment of the court below be in all things affirmed with damages, etc.

*Affirmed.*

## No. XXXI.

### WALKER AND WALKER v. McNEILS AND CALDER

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—D. R. and E. B. Walker filed their petition, addressed to the equity side of the court, against L. H. and J. G. McNeil and R. M. Calder, alleging, that without consideration and by unlawful duress, they were coerced into the conveyance of certain lands and slaves to the defendants, as trustees for the use and benefit of Caroline E. Walker, wife of E. B. Walker, and her infant child E. B. Walker, and such other child or children as the said E. B. Walker and his wife Caroline B. Walker might have during their coverture, and praying that the said deed of conveyance should be delivered up to be canceled and forever declared null and void. The defendants admit the execution of the deed, but deny any knowledge on their part, at the time the deed was executed, that the plaintiffs were impelled thereto by fear of bodily injury, or by threats, violence, or duress of any kind. Upon the trial of the cause the judge directed two issues to be ascertained by the jury: 1. As to the duress. 2. Whether such blood relationship existed between the parties plaintiffs and Mrs. Walker and child as to support the trust.

The verdict returned by the jury upon these issues was, first, that there was no duress at the time of signing the deed; second, that the blood relationship between the Walkers and Mrs. Walker and child was sufficient to support the trust. Whereupon the petition of the plaintiffs was dismissed by the court and a judgment rendered against them for costs, from which judgment an appeal was taken to this court.

Before entering into the discussion of the material points involved

---

**Note 46.**—Wescott v. Menard & Co., p. 503.
[1] Withdrawal of answer is a waiver of defects and confession of cause of action. Winfried v. Yates, Dal., 363; Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Prewitt v. Perry, 6 T., 260; Grier v. Powell, 14 T., 320; Story v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Goodlett v. Stamps, 29 T., 121; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129. Withdrawal of answer after demurrer is overruled does not amount to a confession. Frazier v. Todd, 4 T., 461; Janson v. Bank, 48 T., 599. The judg-

in this cause, it will be necessary to dispose of a preliminary question with regard to a mass of evidence which is embraced in the record, but objected to by counsel as not coming up in such manner and form as to entitle it to the consideration of this court. The testimony appearing in the record and objected to as being improperly contained therein, has appended to it an affidavit made in open court by one Peter McGreal, who states that he was appointed by the court below to take down the testimony in the investigation of the cause; that he believes it to be correctly taken down, and that it was read to the witnesses, who assented thereto. This affidavit is attested by the clerk. By reference to our statute law (volume 4, page 92) we find that where an appeal is taken from the district to the Supreme Court, the facts must be agreed upon by the adverse parties or their attorneys, or certified by the judge, before the rising of the court. It does not appear on the record of this cause that the testimony before alluded to has either been agreed upon by the parties, nor has it the certificate of the judge. It would be a loose and dangerous practice, even in the absence of our statute on the subject, to permit evidence to come before us which might materially affect the rights of parties litigant, upon the mere affidavit of any individual as to his appointment by the court to take down the testimony, and the correctness of that testimony, when it nowhere appears on the record that he was so appointed; but under the law there can be no doubt that we must decide from a consideration of the entire mass of evidence thus introduced.

As the determination of this court will be based on the exceptions taken by counsel below to the charge of the judge to the jury and his refusal to give other charges asked by the counsel, and the rejection of testimony offered by plaintiffs below, it is proper that the material portions of the judge's charge should be set forth, in order to determine whether such error in law exists as will entitle the plaintiffs to a reversal of the judgment. The court below refused to permit a witness to be asked whether or not he knew the plaintiffs to have been beaten, the day previous to the execution of the deed, until they *agreed to sign the same;* and also excluded testimony as to threats made by one Westall against the plaintiffs, to which opinions of the court the plaintiffs excepted. The judge then charged the jury, after some preliminary observations, as follows:

"The jury will reject *all* testimony, circumstantial, inferential, or otherwise, which does not relate to the substance, the time, and *manner* of signing and executing the deed; therefore a voluntary transfer of property for the benefit of the relations of the parties can not be affected

---

ment must conform strictly with the cause of action alleged in the pleadings. Storey v. Nichols, 22 T., 87; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Wheeler v. Roberts, 2 App. C., sec. 129. Judgment nihil dicit partakes of nature of judgment by default and by confession, and is construed liberally in plaintiff's favor. Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Wheeler v. Pope, 5 T., 262; Storey v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Graves v. Cameron, 77 T., 273; **Wheeler v.** Roberts, 2 App. C., sec. 129.

by idle rumors or threats, which may have resulted from the supposed misconduct of the parties executing the trust; and which were not held up before them at the *moment* of acting, or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence from the terror of personal violence. If the plaintiffs, having been guilty of any misconduct which was calculated to call down upon them public resentment or indignation, voluntarily sought the method of a conveyance in trust for the benefit of the injured party, intending thereby to appease popular clamor, that act can not be set up in a court of justice to annul their own deed. The violence must be of such a threatening and instantaneous character as to make fear the moving, operating consideration to the deed. If the threats were made by those not present to execute them, it was easy for the persons threatened to apply to the civil authorities for protection; and it could not therefore be such a duress as would avoid the deed. It will be for the jury to determine from the facts of the case, whether these *impending circumstances* existed, taken in connection with the law. Duress is of two kinds—duress of imprisonment, where the person is confined; and duress of threats, where the act of violence is *declared,* or hanging over the party. Duress by threats is rather the fear of loss of life or limb. This fear must be well grounded; not mere conjecture or suspicion of danger, such as a timid mind might conjure up in a moment of alarm. The fear of losing one's property is no duress, because the injury may be repaired by damages; but no adequate atonement can be made for the loss of life, or limb, or liberty, or ignominious punishment." The charge asked by the plaintiffs' counsel, and refused by the judge, was, that when a party is subjected to undue influence of extreme terror or threats, or apprehensions short of duress, and executes a deed under such circumstances, it is void; also, that a deed made under circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, is void. Upon exception to the refusal to give this charge, the charge as given, and the rejection of the testimony offered, we are to determine whether the judgment should be affirmed or reversed. By referring to the charge of the judge, both in part and in whole, we find that the jury were required to confine their examination and base their determination upon facts which would prove duress at the *very time and place* of executing the deed; expressly charged to exclude all testimony, *inferential, circumstantial, or otherwise,* which did not relate to *the time, the manner, and the substance* of signing and executing the deed. This is stated in the very outset of the opinion of the judge. Immediately

---

[2] If the writ or citation is defective and the defect is discovered before defendant answers, a new writ may be awarded. If defendant answers, he waives objections to process. Raquet v. Nixon, Dal., 386; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v. Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Railway Co., 76 T., 100.

afterwards he states, "that no idle rumors of threats, which were no.
held up before the parties at the *moment of acting,* or whilst the neces-
sary preparations were making to carry out the objects of the convey-
ance, with a view to compel their acquiescence, should be regarded by
the jury." In fact, throughout the whole charge the same expressions,
variously modified, but all tending to the same end as stated above, are
repeated and enforced by the court. By an examination of the law
guarding the decisions of courts on questions of this kind, we find that
relief is afforded by the courts in a much more extensive class of cases
than that embraced under the common law definition of duress, as given
by the judge in his charge to the jury.

In 1 Story on Equity, page 243, the very words embraced in the
charge asked by the plaintiffs' counsel and rejected in the court below
are found; and the authorities there referred to fully sustain the doc-
trine. Nowhere do we find that the threats of violence, which are the
inducement to a particular act, must be made at the very *time and place*
of the execution of that act. The fear must exist at the time of the
execution of a deed, but the threats and circumstances inducing that
execution need not be present, but may be proved at any antecedent
time; and it is for the jury to say, when those threats and circumstances
are proven, whether they are sufficient to induce such fear as might
move a man of ordinary firmness to the execution of the deed. But
when we take in connection with the charge of the judge, confining and
restricting the investigation of the jury, both by limited terms of the
law and to a still more limited application of the facts, the refusal on
the part of the court to admit the testimony shown to have been offered
in the trial below, which testimony was at once legitimate and must, if
answered in the affirmative, have had a direct and powerful influence
on the minds of the jury, there can remain but little doubt that manifest
injustice would be done by sustaining the judgment rendered below.
The charge alone might not have been sufficient to reverse; but coupled
with the rejection of testimony which was directly to the issue, a due
regard for the rights of parties and for the laws, which must govern
our decisions, requires a reversal of the judgment. From the meager
statement of facts found in the record we can not proceed here to give
such a judgment as should have been rendered in the court below. The
cause will therefore be remanded for a new trial, and all the costs of
the case will await the final decision of the cause.

*Remanded.*

---

[3] Errors not objected to in trial court can not be raised on appeal. Ed-
wards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy,
Dal., 376; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58;
Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v.
Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swen-
son v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T.,
109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v.
Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T.
Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; Andrews
v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544;
Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v.

## No. XXXII.

### Daniel McKinney v. Peters and Lewis.

#### (See Note 59.)

*Appeal from Bowie.*

OCHILTREE, Justice.—Daniel McKinney filed his petition in the District Court of Bowie County, in which he alleges that on the 17th day of June, 1840, John S. Peters and Charles Lewis, the latter by the name and description of Chas. Lewis, for value received, acknowledged themselves indebted to your petitioner in the sum of $296.31, and in consideration thereof executed at the same time their promissory note, whereby they jointly promised to pay your petitioner said sum one day after date thereof aforesaid; yet though often requested, etc. We presume that the order of pleadings in the case is not correctly stated in the transcript sent up, as the record represents the defendant as pleading first the general issue and then demurring to the petition. The demurrer was overruled and a jury impaneled, when a note described as follows was attempted to be offered by the plaintiff in evidence.

"$296.31-100. One day after date, we promise to pay Daniel McKinney, guardian of the heirs of William Collum, deceased, two hundred ninety-six 31-100 dollars, value received of him this 17th June, 1840. (Signed) John S. Peters, Exr. of Samuel Peters, deceased. Charles Lewis."

Which note the court refused to permit to go to the jury, to which opinion of the court the plaintiff excepted. The verdict of the jury was for the defendant; judgment accordingly. Why the court below refused to let the note go to the jury we are not informed by anything contained in the statement of facts. From the arguments and briefs of counsel submitted, we are led to the conclusion that the court below are of opinion that there was a variance between the note described in the petition of the plaintiff and that offered as evidence. If it was because the petition did not set out the description of Peters, one of the payees, we are of opinion that he erred. There is no better settled doctrine than that an executor or administrator can not contract a debt to bind his intestate's estate. This being admitted, the fact that he thought proper to add, as an appendage to his name, executor of Samuel Peters, deceased, imposed no obligation on the plaintiff so to describe

Ray, 50 T., 511; Urquhart v. Womack, 53 T., 516; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

him in his petition. It might have been because the descriptio personae of the payee was omitted in the petition. We do not believe that it was necessary that the petitioner should have averred it, to enable him to offer a note which corresponded in all other material requisites with the indebtedness set forth. On a note made payable to an administrator, he may sue in his own name. Bayley on Bills, 335. So on a note payable to anyone in a fiduciary character, the payee need not sue in that character, but may maintain an action in his own name. We are of opinion, therefore, from all that we can glean from the record, that the court below erred in refusing to allow the note to be offered as evidence. It is therefore ordered, adjudged and decreed by the Supreme Court of the Republic of Texas, that the judgment of the court below be reversed, and that the plaintiff Daniel McKinney do recover of the defendants, John S. Peters and Charles Lewis, the sum of $296.31, principal, and $71 interest, together with all his cost in this behalf expended, together with 10 per cent damages for delay, and that execution issue therefor.

*Reversed and rendered.*

Concurred in by Chief Justice John Hemphill and Judge R. E. B. Baylor.

Judge P. C. Jack says: "I am compelled to dissent from the above opinion. I do not think the note offered in evidence was described in the petition. The judgment in this case, it seems to me, would be no bar to an action brought on the same note, by the plaintiff as guardian."

## No. XXXIII.

### JOHN DURST v. JOSEPH F. LEWIS.

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—In this case the appellant, or plaintiff in error, was trustee for both parties to the record, and had no such interest in the matter in controversy as would authorize him to represent the rights of one in opposition to the claims of the other party. The parties are not properly before the court, and no case is presented for the exercise of appellate jurisdiction. Under such circumstances it would be superfluous to examine into the errors assigned by the plaintiff, as it would not be competent for this tribunal to afford relief against them, if any there might be. It is therefore ordered by the court here, that the writ of error be quashed and the case dismissed.

*Dismissed.*

---

**Note 47.**—Bradley v. McCrabb, p. 504.
[1] Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

## No. XXXIV.

### SAMUEL SHARPE v. THE REPUBLIC OF TEXAS.

*Appeal from Jackson County.*

OCHILTREE, JUSTICE.—Samuel Sharpe, having proved before the board of land commissioners of Jackson County that he was a resident citizen at the date of the declaration of independence, a single man, and had actually engaged in the service of his country pending the revolution, having been present at the taking of San Antonio and at the battle of San Jacinto, was allowed a certificate for one-third of a league of land. Subsequently and within the time prescribed by law he married, and thereby became entitled to an augmentation of two-thirds of a league and one labor of land. The woman whom he had married had arrived in this Republic after the 1st day of January, 1837, and was the head of a family; and in her own right, anterior to her marriage with Sharpe, received a certificate under the twenty-fourth section of the land law for 1280 acres of land. When Sharpe after his marriage applied to the board for his augmentation, they insisted on deducting from the two-thirds of a league and labor to which he was entitled, the quantity of land for which his wife had, previously to marriage, received her certificate. From this decision the plaintiff appealed to the district court, where, strange to say, the judgment of the commissioners was not only reversed, but Sharpe was decreed to recover nothing by his suit. From this judgment the plaintiff took an appeal to this court. In this state of case, it becomes our duty to render such judgment as should have been rendered by the court below. The board of commissioners should have issued the plaintiff a certificate for the full quantum of land authorized by the twenty-third section of the land law, passed December 14, 1837, viz., two-thirds of a league and one labor. That section contains the only exceptions to the rule, viz: that its provisions should apply to those only who have contributed to the support and defense of the country; that the additional quantity shall not be allowed to any whose wife has received a league of land from the government. Neither exception applies in this case. The judgment of the court below must be set aside. It is therefore ordered, adjudged and decreed, that the plaintiff, Samuel Sharpe, recover of the Republic of Texas an augmentation of two-thirds of a league and one labor of land, and that the judgment of this court be certified to the District Court of Jackson County, and that the clerk of

---

² Quo warranto is a legal proceeding by the State to determine the right of an office or franchise, and to oust or forfeit. As a general rule, it can only be sued out in the name of the State by its prosecuting officer. It is also used to ascertain whether an individual has authority to exercise official functions. Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Grant v. Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress, 53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;

said district court be ordered and directed to issue to said Samuel Sharpe a certificate, in due form of law, for said amount of land.

*Reversed and rendered.*

## No. XXXV.

### SCOTT AND SOLOMON v. MAYNARD ET UX.

(See Note 60.)

*Appeal from Matagorda County.*

HEMPHILL, CHIEF JUSTICE.—Maynard and wife brought this action in the court below against Scott and Solomon, to try the title to a certain lot of land in the town of Matagorda. The answer of the defendants denies the allegations of plaintiffs, and asserts title to themselves to the lot in question; filing interrogatories to be answered by the said Maynard, in relation to the consideration paid by him for certain improvements on the said lot. A conveyance of the said improvements by Scott and Solomon to Maynard is filed as an exhibit in the case; and Maynard's answers to the interrogatories are, that the consideration consisted of cash advanced, goods sold, work done and liabilities assumed; and that it has not failed. Upon an affidavit of Scott and Solomon, a change of venue was granted, by the judge in chambers, to the county of Brazoria; but the cause was never transferred. Trial being had, judgment was rendered for plaintiffs, and a writ of possession to the lot in controversy awarded. A motion for a new trial was made on the following grounds, viz: that the court instructed the jury that the only question for their inquiry was as to the title to the lot, and that they were not to inquire into the value of the improvements, and that no survey of the property was ordered by the court; no demand of possession proven by the plaintiffs; and no notice to quit given to defendants. The motion was overruled, and an appeal taken. During the progress of the cause there were three several agreements of the counsel•of both parties in relation to the title of the wife of the said Maynard to the land in dispute; by the final modification of which it was admitted that she had become the owner thereof by purchase, after her marriage with the said William J. Maynard. The petition and answers in a suit in equity, instituted by Scott and Solomon against Maynard and wife, were offered in evidence. In his answer, the said William J. Maynard admits that some time in October, 1839, he offered verbally to sell to the said Scott and Solomon the said lot for the price of $600 in cash; that they, having accepted the proposition, took possession of the same, promising from day to day the payment of the said money in

---

Territory v. Lockwood, 3 Wall., 236. An individual may make the relation on which the State's officer files the information. In such cases the proceedings are in the exclusive control of the State's officer, and can not be dismissed by the relator. Banton v. Wilson, 4 T., 400; Mathews v. State, 82 T., 577; McClesky v. State, 4 T. C. A., 322. If relator has no interest, court

SCOTT AND SOLOMON V. MAYNARD.

pursuance of their agreement, but had hitherto failed to do so. He admits that the said Scott and Solomon had erected a building on the said lot, but states that they had disposed of the same for a valuable consideration, and that his wife, C. O. Maynard, is now sole owner and proprietor thereof. From some exhibits in the case it appears that this house was conveyed by Scott and Solomon to the said William J. Maynard and by him to one Thomas Stewart, and from the said Thomas Stewart to the wife of the said Maynard. A. C. Horton testifies, that Maynard admitted to him that he had sold the lot of ground to the appellants for $600, to be paid in sixty days. Maynard also stated that Scott and Solomon had made him a deed for the improvements, to secure him as their indorser. The value of the improvements he would estimate at four or five thousand dollars, at the time they were made. John W. McCamly testified that Maynard made similar admissions to him as to the sale of the lot, and that he had received the money. Witness thought that he had received property sufficient to satisfy him.

This cause was heard at the previous session of the Supreme Court. The arguments of counsel were then principally directed to the grounds urged in the motion for a new trial. To these points we will now first advert. The statute under which this action was brought was passed to prevent the complicated and fictitious proceedings of the action of ejectment, as known to the law, simplifying its form and modifying in some degree its action and effects. In the eighth section of that act it is provided, that on a suggestion of a defendant in possession of lands that he and those persons under whom he claims have had adverse possession of the land in controversy for at least one year previous to the commencement of the suit, etc., that the jury shall inquire into the truth of the suggestion, ascertain the value of the improvements, if any have been made, and give such judgment either for or against the defendant as the comparative value of the improvements and the damages sustained by the detention, use and occupation may require at their hands. The third section provides, that a survey shall be ordered by the judge of the land, in chambers or in court, or upon motion of either party, for the better finding out and discovering the truth of the matter in controversy. There was no error in the court below in overruling the points here made. As to the first, no suggestion as required by law was filed; and though the value of the improvements was proven, still no inquiry could be made by the jury, since there was no allegation in the answer under which the proof could be introduced, and any evidence therefore on that point was extrinsic to the issue. The provision with

---

may refuse to allow the information to be filed, or dismiss it. Deaver v. State, 27 T. C. A., 453. Can not be used as a remedy by a stockholder of a corporation. State v. R. G. Ry. Co., 41 T., 217. Quo warranto is a proper proceeding to try title to an office, but it has always been regarded by our courts as only a cumulative remedy. Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. Cocke, 54 T., 482; Flatan v. State, 56 T., 93; Watts v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348; Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State, 70 T., 393; State v. De Gress, 72 T., 242; Hunnicutt v. State, 75 T., 233. The term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol.

regard to the survey is merely directory where there is doubt, though a matter of right when required on motion; and since no motion was made for the survey, and no difficulty arose as to the proper designation and identification of the land, the petition and answer concur in their descriptions of the lot in dispute. There being, then, no necessity for the survey, there was no error in proceeding to trial without an order for the same. Equally unsound are the other reasons alleged in the motion. Demand of possession and notice to quit are necessary when the parties occupy the relative position of landlord and tenant. But the defendants claim the lot in controversy as their absolute property. The important questions which still present themselves, from an inspection of the record, are in relation to the interest or estate which the wife has to the land in contest; the husband's power of disposing or selling of the same; and whether the sale, being made verbally, was valid and binding in law.

The alleged sale of the lot in question from Maynard to Scott and Solomon, having been made in 1839, before the introduction of the common law, the rights of the parties are regulated and must be determined by the system of laws prevailing in this Republic at the period of the transaction. As tested, then, by these laws, did the purchase by Mrs. Maynard of this property after her marriage vest in her any estate or interest separate and apart from that of her husband; or did it immediately become a portion of the community of "acquits," or gains? By reference to White's Recopilacion, we find that ganancial property is all that which is increased or multiplied during marriage; by multiplied, being understood all that which is increased by onerous cause, or title; and not by a heratine one, as inheritance or donation; that property is supposed to be common, except when proved to be separate or distinct; that what the husband or wife bring into marriage as their own peculiar property, or acquire during it by lucrative cause or title, does not come into partition; but that property acquired during marriage by purchase, sale, or other onerous cause or title, does. 1 White's Recopilacion, p. 61. Having no access to the works of Febrero, we are compelled to glean such extracts from that author, applicable to this subject, as may be found on examining the Reports of Louisiana. In Davenat v. Le Bocton, 1 La., 520, it was decided that by the Spanish laws everything purchased during the marriage fell into the common stock of gains, and at the death of either of the parties was to be divided equally between the survivor and the heirs of the deceased; and this

9, p. 75), Rev. Stats. 1895, art. 4347, regulating quo warranto proceedings, applies only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. Co. v. State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats. 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry. Co., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry. Co., 89 T., 562; also see State v. S. P. Ry. Co., 24 T., 80; State v. R. G. Ry. Co., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by

effect was produced whether the purchases were made with the money or capital of the community, or with that of either of the married parties; whether in the name of both, or that of one of them separately. See Feb. add. part 2, lib. chap. 4, sec. 1, No. 6. In the Novissima Recopilacion (lib. 10, title 4, sec. 1), we find a law expressed in the following terms: "'Toda cosa que el marido y muger ganaren a compraon estando de consuno hay aulo ambos por medio," etc. [Everything which the husband or wife shall acquire or purchase while together shall be equally divided between them, etc.] From an examination of the above authorities, we are justified in concluding that under the Spanish laws property acquired during marriage by purchase, whether the acquisition be made in the joint names of husband and wife or of either of them separately, must be considered as common property, and that if there be any exception to this general rule, it must be established by certain and positive evidence, or otherwise the presumption that the property is common will remain in all its force unimpaired. It appearing, then, by the testimony that Mrs. Maynard acquired the lot in dispute by purchase after marriage, the same was thrown into the common stock of gains, and by operation of law was impressed with all the incidents appertaining to ganancial property.

We proceed to consider the husband's power of disposing or selling the same. In Sala, lib. 1, title 4, sec. 20, it is clearly laid down that, during the continuance of the marriage the *actual* dominion over the community property is vested in the husband, and that therefore he can sell the common property without the consent of the wife; and that such disposition is valid, except when made for the purpose of defrauding or prejudicing the wife. See also, 1 White's Recop., p. 63, with the notes from Palacios. Maynard, then, having the administration of the ganancial property, and the power of disposing thereof without the consent of his wife, his alienations of the same, when not vitiated by the exception above mentioned, would be valid and binding in law. The question next in order is as to the validity of a verbal sale under the laws of Spain. In the 5th Partida, title 5, Law 6, it is said that sale and purchase may be affected in two ways, etc. "One of the modes is without writing; when the seller and buyer have mutually agreed upon the price; the one being pleased with the price and the other the thing, without mentioning any writing. We say that a sale thus made would be perfect, although no earnest had been given by the buyer to the seller; as they would be both bound for the fulfillment of the contract they had made." In Gonzales v. Sanches and Wife, 10 N. S., 67, and in Ducrest's Heirs v. Bijeau's Estate, it was decided that, by the Spanish

law—may be filed by district attorney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the

laws, parol evidence was admissible to establish the alienation or acqui-
sition of immovable property; and in Sackett v. Hooper, 3 La., 104,
the same doctrine was expressed in substance, though in the latter case,
possession on the part of the vendee was maintained as a necessary in-
cident to the validity of the sale.  From an examination of the above
law and authorities, we are of opinion that a verbal sale of lands, accom-
panied by possession on the part of the vendee, was valid under the laws
in force at the time of making the contract (in this Republic).  From
the record, we think there was sufficient evidence that a verbal sale was
made by the said Maynard to the appellants.  His answer to the suit
in equity partially admits the fact, and also of possession taken by the
vendees.  Two witnesses testify to his admissions of having sold the lot
for $600; one of them says, to be paid in sixty days; and the other, that
Maynard admitted the receipt of the money.  The fact of the sale (which
was valid in law) being thus established by evidence, the finding of the
jury in favor of the plaintiffs in the court below was clearly erroneous.
Before awarding final judgment, the court will take occasion to express
its sense of the important assistance afforded them by the able and zealous
efforts of the gentlemen of the bar, when their investigations are directed
to the system of laws by which the matters in controversy must be de-
cided.  But when their arguments are based on some other system, which,
however admirable for its justice or exalted for its wisdom, can exer-
cise no other authority than that derived from the force of reason, their
labors serve to perplex and confound, rather than remove the embarrass-
ments which shroud the important principles involved in the contro-
versy.  The court appreciate the difficulty arising from the scarcity
of books or authorities on questions arising under the former laws of
the country.  But it is clearly the duty of the attorneys to exhaust all
which may be accessible to them before they turn for assistance to the
common or any other system of law.  Throughout the progress of this
cause in the court below, as well as before this tribunal, there has been
a strange compound of error, and a mixture of the different systems of
jurisprudence, springing originally from the belief that the lot sold
was the separate property of the wife.  The errors which appear in the
charge of the court below originate from this mistake; and from the
conduct of the argument in this court, it is manifest that the principles
of law which governed the case were not discussed before the district
court; and from this circumstance the judge was misled to charge on
principles of law which were not applicable to the case.  Having ma-
turely considered the matters presented on the record for our decision,

office, to question right of officer to do an act or restrain him from exercising
a privilege incident to his office.  State v. Smith, 55 T., 447.  Nor to oust an
officer for bribery until conviction.  State v. Humphries, 74 T., 466.  Nor to
revise decision of city council as to eligibility of candidate for municipal
office.  Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264.  Nor
by public weigher against a private weigher.  Watts v. State, 61 T., 184.
It does not lie to forfeit fronchise, except for causes declared by statute.
State v. R. G. Ry. Co., 41 T., 217; Morris & Cummings v. State, 65 T., 53.
It lies against the enjoyment of a franchise granted either by State or muni-
cipal legislation, when the power to grant did not exist; and the legality of

we are of opinion that the judgment of the court below was erroneous and should be reversed; and it is therefore and hereby ordered, adjudged and decreed, that the judgment of the court below be reversed, and that the appellees pay the costs of suit.

*Reversed.*

## No. XXXVI.

### JOHN W. MOORE, SHERIFF, v. JOHN D. MOORE.

*Appeal from Harris County.*

JACK, JUSTICE.—This case comes up by appeal from Harris County. John D. Moore, who was the plaintiff below, by his counsel, moved against John W. Moore, who was sheriff of Harris County, for failing to return an execution, which the said John D. Moore had against one Pilie. There was judgment for plaintiff on his motion, against the sheriff as principal, and against George Stephens, B. Carraher, A. Larson, Charles Bowman and R. Walker, his securities; and defendants appealed. We can not find in any part of the record in this case that John W. Moore either had notice of the motion against him or of his appearing and contesting it. By an act passed May 24, 1838, a summary remedy is granted against sheriffs in certain cases; provided that three days notice of such motion be given to such sheriff. This is an extraordinary remedy and must be strictly pursued by those who wish to avail themselves of its provisions. In no part of the act are the securities mentioned, and we think it never was intended to mean more than that the sheriff alone and not his securities could be reached by motion.

We think there was error in the court below; first, because it does not appear from the record that the defendant below had the notice which the statute requires; and secondly, even if the securities could be reached by such motion, they were not included in the motion. It was against the sheriff alone; and the judgment was manifestly erroneous, so far as their rights were affected.

Let the judgment of the district court be avoided and reversed, and the cause remanded.

*Reversed and remanded.*

---

the corporation may be called in question by quo warranto in an action involving the right of an officer to do an act under the charter. Morris & Cummings v. State, 62 T., 728; State v. Goowin, 69 T., 55; Furrh v. State, 6 T. C. A., 221. It lies to test validity of a municipal or quasi municipal incorporation. State v. Dunson, 71 T., 65; East Dallas v. State, 73 T., 370; State v. Eidson, 76 T., 302; Ewing v. State, 81 T., 172; Mathews v. State, 82 T., 577; State v. Wofford, 90 T., 514. In such cases laches can not be imputed to the State. State v. Wofford, 90 T., 514; Troutman v. McClesky, 7 T. C. A., 561. It is not a means to compel a person or corporation to carry out contracts. It is used to forfeit, not to suspend a franchise; to reclaim a privilege, not to punish for breach of contract. Morris & Cummings v. Schooner Leona, 67 T., 303. Though quo warranto is in form analogous to a criminal prosecution, the remedy is civil in nature. State v. Degress, 53 T., 387; Davis v. State, 75 T., 420; Buckler v. Turberville, 17 T. C. A., 120; Ames v. Kansas, 111 U. S., 449; Foster v. Kansas, 112 U. S., 201.

## No. XXXVII.

### NANCY WILLIAMS V. GEORGE HUFF.

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—In this case a writ of injunction was ordered to issue, on the plaintiff's bond and security required by law. Some informal proceedings followed and a judgment was finally awarded, ordering defendant to pay the costs of suit; but no bond appears on the record and consequently there is no evidence that any was given as required by law and the order of court. The want of the bond, we think a fatal defect, vitiating all the proceedings subsequent to the order that a writ of injunction should issue. It is therefore ordered, adjudged and decreed that all proceedings, subsequent to the order of the court commanding the writ of injunction to issue be reversed and set aside, and that the cause be remanded to the district court for further action.

*Reversed and remanded.*

## No. XXXVIII.

### JAS. W. AND S. W. SIMMS V. JOHN PRICE.

#### (See Note 61.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This cause should be reversed and remanded for a new trial, because the verdict of the jury is irresponsive to the evidence. That part of the finding of the jury, based on the only evidence offered, was very properly for the defendant. The jury arrogate to themselves the right, however, to go farther, and to determine the rights of the parties according to their own notions of what had taken place between them. The province of a jury is to determine a case upon the facts as proven, connected with the law as given them in charge by the court. They should never let their own impressions, derived from knowledge of circumstances on their own part, or impressions received from others not introduced as witnesses, sway their minds or enter into their verdict.

*Reversed and remanded.*

---

**Note 48.**—Roman v. Moody, p. 512.

Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

**Note 49.**—Taylor v. Duncan, p. 514.

[1] Appeal will be dismissed if transcript is not sent up within the time prescribed by law unless satisfactory excuse be shown. Lockhart v. Lockhart, 1 T., 199, 201; Hicks v. Harlan, 1 T., 560; State v. Kroner, 2 T., 492; Keese v. Swift, 3 T., 111; Urbane v. Johnson, 3 T., 191; Reynolds v. De-

# JUNE TERM, 1844.

### No. 1.

#### RAYMOND DARLY v. CHAS. CHEVALLIER.

##### (See Note 62.)

*Appeal from San Augustine.*

BAYLOR, JUSTICE.—Two points present themselves for our consideration in this case, which are alleged as grounds of error for a reversal of the judgment below.

1.  That the note sued was payable on the contingency of the return of the payee from San Antonio, and that it was not proven on the trial that he had ever returned.

2.  That it is not alleged and proven that the claim had ever been presented to the appellant, as administrator of the payor.

In regard to the first point it will be sufficient to say that the note bears a credit of $100, which, added to length of time which had elapsed between the making of the note and the commencement of the suit, was sufficient to raise the presumption that the contingency had happened.

The second point is of more consequence. This court has decided, that under out statute it is necessary to allege and prove that the claim had been presented to the administrator and refused by him, and that this court would reverse judgments in the courts below, where such allegation and proof was wanting. See Cummings, Administrator, v. Jones. This case at bar was commenced before the passage of our statute, and although its provisions are similar to those of Louisiana, yet we feel bound to conform to the Louisiana decisions in cases arising before our statute. In Louisiana it is necessary to present claims to an administrator before suing on them; but unless advantage is taken in the court below of such nonpresentation, the appellate tribunal will not notice the defect. In the case at bar no objection was taken in the court below to the want of an allegation of the presentation and refusal of the claim, and this court will not now set aside the judgment for that reason. This decision is not to be understood as overruling the case of Cummings v. Jones, and the decision in that case will be adhered to.

Let the judgment of the court below be affirmed with costs.

*Affirmed.*

chaumes, 22 T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5, 13; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419. Where right of appeal is lost by lapse of time it can not be revived by statute subsequently passed. Lockhart v. Lockhart, 1 T., 199, 201; First Nat. Bank v. Preston Nat. Bank, 85 T., 560; First Nat. Bank v. Preston Nat. Bank, 3 T. C. A., 545.

[2] Retrospective laws prohibited by Constitution are such as give rights or impair vested rights, by relation back. Sutherland v. De Leon, 1 T., 250; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Hamilton v.

## No. II.

### ANDREW BRISCOE V. CORRI AND WIFE ET AL.

*Appeal from Harrisburg County.*

BAYLOR, JUSTICE.—The appellant, Briscoe, commenced his suit in the court below against Henry Corri (who had intermarried with Eliza Hight, widow of William Pope) and one David Y. Portis, for the recovery of a certain negro man slave commonly called Henry; and for the sum of $1000, alleged to be due for the hire of said slave. Briscoe avers in his petition, that on the 20th of March, 1839, he purchased of the said Eliza for the consideration of $800, to her in hand paid, the slave in question; that she warranted him to be sound in body and mind; free from incumbrance as to title, and a slave for life; "to have and to hold the said slave, his profits and labor to him, the said Briscoe, his heirs and assigns forever; on condition, however, for the purposes named in their written contract, to wit, that the said Eliza should keep the possession of the said slave in the city of Houston for one month, and at the expiration of that time she should, on the payment of $100, have the privilege of keeping the said slave one other month; after which time she was to keep the said slave, so long as she wished, on the month's payment in advance of the sum of $200, with the further trust, that on the payment of the said hire, punctually in advance one month, the said Eliza had the privilege of purchasing the said slave for the sum of $900; all of which would fully appear by the bill of sale and the trust therein contained, marked (A), and prayed to be made a part of his petition."

Briscoe further alleged that the said Eliza had not complied with any of the trusts mentioned in said instrument of writing, except the payment of the first and second month's hire; that she had entirely failed to comply with any or either of the other trusts in said writing named, and that she had thereby forfeited and forever lost the privilege of either keeping said slave, or of repurchasing him at the price agreed on between the parties. The petition further alleges that the said Eliza, confederating with others, had the said slave in possession; and that the other defendant, Portis, in some way or other had connected himself with the transaction so as to have the actual control of said slave. The petition concluded with the usual prayer, that defendants be compelled to deliver up said slave to the said Briscoe, and that the defendants' title to the same be vested in him, and that the hire be paid, etc.

---

Flinn, 21 T., 713; Sherwood v. Fleming, 25 T. Supp., 408; Bender v. Crawford, 33 T., 745; Moore v. Letchford, 35 T., 185; Chalk v. Darden, 47 T., 438; White v. Martin, 66 T., 340; Mellinger v. Houston, 68 T., 37; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Calder v. Bull, 3 Dal., 386; Cummings v. Missouri, 4 Wall., 277; Campbell v. Holt, 115 U. S., 630. Providing a remedy for existing rights, or changing remedy, is not a retrospective law prohibited. Hall v. Allcorn, Dal., 433; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 343; Treasurer v. Wygall, 46 T., 447; Worsham v. Stevens, 66 T., 89; Parker v. Buckner, 67 T., 20; Odom v. Garner, 86 T., 374; Association v. New-

To this petition at the spring term of the district court in the year 1840, the defendants filed the following plea:

"In this case, David Y. Portis, Henry Corri and Eliza Corri by attorney, come and defend the wrong and injury, etc., and for answer say, that the negro boy mentioned in plaintiff's petition was delivered up to him, D. Y. Portis, in part satisfaction of a certain mortgage, which he had and held as attorney, for F. Soissons, of the city of New Orleans, against the said Eliza Corri; and that at the time of the delivery, the said negro was in possession of said Corri; and for further answer denies all and singular the allegations in plaintiff's petition and pleads payment of the debt. D. Y. Portis, for himself; Megginson & Thruston, for H. Corri and E. Corri."

On the trial of the cause in the court below, there was a verdict and judgment in favor of the defendants for the sum of $223.50, and that the title of the slave sued for was in the defendants. From which judgment Briscoe appealed, and seeks to reverse it here on two grounds:

1.  The court below erred in considering the bill of sale a mortgage, instead of a conditional sale, with the privilege of repurchase on the part of Eliza Corri.

2.  Under the pleadings in this case, it was error to render a judgment against the appellant, if the facts would otherwise justify it; as there was no plea of reconvention or offset.

In considering the first assignment of errors, we find upon looking into the record that the court below considered the bill of sale for the slave a mortgage, and permitted the defendants to show by verbal proof the consideration which Briscoe paid for the slave, and to show also by proof how the mutual account stood between the parties. Without deciding whether the bill of sale in this instance is a mortgage or conditional sale with the privilege to repurchase, we think that the written contract bears strong marks upon its face of hardship and oppression. This circumstance, together with the fact that the slave remained in the possession of the vendor, might perhaps, upon a proper state of the pleadings, have authorized the judge below to have concluded that the bill of sale was a mortgage and not a conditional sale. But it is unnecessary to decide this point, as we consider the second assignment of errors fatal to the cause.

In the second assignment of errors we think the objection is well taken. Under the plea of the defendants the jury were not authorized to find a balance in favor of them, there being no plea of set-off claiming such indebtedness on the part of Briscoe to the defendants. As the

man, 86 T., 380; Fristoe v. Blum, 92 T., 76; Standifer v. Wilson, 93 T., 232; Capps v. Carvey (T. C. A.), U. R. C., 1897; Maynard v. Freeman (T. C. A.), U. R. C., 1900. Statutes are never construed to operate retrospectively unless their plain language requires it. Taylor v. Duncan, Dal., 514; Linn v. Scott, 3 T., 67; Martin v. State, 24 T., 61; Orr v. Rhine, 45 T., 345; Insurance Co. v. Ray, 50 T., 511; Grigsby v. Peak, 57 T., 142; Johnson v. Taylor, 60 T., 360; Mellinger v. Houston, 68 T., 37; Rockwall Co. v. Kaufman Co., 69 T., 172; McGregor v. Goldammer, 2 U. C., 49; Murray v. Gibson, 15 How., 421; Harvey v. Tyler, 2 Wall., 329; Chewheong v. United States, 112 U. S., 536; Shreveport v. Cole, 129 U. S., 36.

plaintiff below could not recover more than the sum claimed by him to be due in his petition, neither could the defendants have a judgment in their favor for a greater sum than they claimed by their plea. This rule is essential to every cause to prevent surprise; and in order that the parties litigant may know what the matters really are in dispute between them. The judgment therefore of the court below must be reversed, the cause remanded, and a new trial awarded, with leave for the parties to amend their pleadings, in order that the case may be disposed of upon its true merits. .

*Reversed and remanded.*

## No. III.

### WILLIAM B. HAWKINS v. ELIJAH STEVENSON.

*Appeal from Bowie County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted in the District Court of Bowie County by the appellee against the appellant, on a promissory note with a seal attached, payable to the appellee and not negotiable on its face. The appellant, defendant in the court below, plead the general issue, and a verdict and judgment were rendered against him. At the trial term of the cause, the note had been lost and parol testimony was admitted to prove its loss and its original existence. A motion was made to set aside-the verdict and grant a new trial on a number of grounds, only one which it is necessary to consider at present, the others being frivolous, except-the fourth, which is as follows: "That oral testimony can not be received, as was the fact in this case, to prove the existence of a bond or note under seal, when it is possible that the said bond or note may hereafter be produced."

It has also been assigned, as additional grounds, upon which the judgment of the district court ought to be reversed:

1. That the original existence of the instrument declared upon was not established by the testimony as it is sent up to this court in the statement of facts.

2. That the name of the party plaintiff in the court below was not stated in the petition, as required by the statute.

Let us examine these three grounds in the order in which they are stated. 1. There is no principle of law better settled than that oral testimony is admissible to prove the loss of bonds or notes, and when the fact of loss is satisfactorily established, to prove by the same description of evidence the original existence and contents of the instrument. The

---

Note 50.—Denison v. Ingram, p. 519.

A decree probating a will is not subject to collateral attack and is conclusive as to all persons, until set aside. Paschal v. Acklin, 27 T., 173; Lewis v. Ames, 44 T., 319; March v. Huyter, 50 T., 243; Whitman v. Haywood. 77 T., 557; Box v. Lawrence, 14 T., 545. A will which has been probated in another State is not open to contest. Poole v. Jackson, 66 T., 380.

legal demand of the payee or bona fide holder is not extinguished by the destruction or loss of the written evidence of his claim; but upon proper proof of its original existence and loss, or destruction, he will be entitled to a recovery. There is some distinction drawn in the authorities, by which the rule is made more rigorous, in relation to negotiable instruments merely lost and not destroyed before falling due, where the maker or acceptor might run the hazard of being compelled to pay the debt again in case the lost instrument should be discovered in the hands of a bona fide holder for a valuable consideration. In such cases it may be necessary to go into a court of equity to obtain a recovery by a tender of proper indemnity. But the general principle is well settled. McNair v. Gilbert, 3 Wend., 344; Wamsly v. Child, 1 Vesey, 341; Long v. Baillie, 2 Camp., 214, note; Jones v. Fales, 5 Mass., 101; Renner v. Bank of Colombia, 9 Wheat., 581. In the latter case the admissibility of parol testimony was resisted, unless the *destruction* of the note had been previously made apparent; but the Supreme Court of the United States overruled the objection, saying that the rule with regard to the admission of secondary evidence is not so restricted—"if the original is *lost* by accident and no fault is imputable to the party, it is sufficient—that every case of this kind must depend in a great measure upon its own circumstances—and the rules of evidence be so applied as to promote the ends of justice and guard against fraud and imposition."

No difficulty can arise in relation to the case now under consideration. The instrument on which the suit was brought has never been transferred out of the hands of the plaintiff, who was the original payee; and being payable to him alone and not to order or to bearer, no suit could hereafter be maintained against the maker except in the name of the payee or his legal representatives. The defendant therefore runs no risk of ever being compelled to pay it over again, as the judgment in this case could always be pleaded, in bar of any other action, into whomsoever's hands the lost note might fall, or under whatever circumstances.

As to the second ground: It is not denied that the loss of the instrument sued on was fully established; but it is insisted that its original existence was not established by the testimony as sent up to this court in the statement of facts. The loss of the note occurred after the petition was filed and before the trial of the cause; it was particularly described in the petition; it was not in the hands of the plaintiff at the time of its loss, but in those of the attorney who drew the petition; who in his testimony says that the paper lost was the one described in the petition,

Note 51.—Trott v. Patton, p. 522.

Interest is a creature of local law and governed by the law of the place where the contract is made. Huff v. Folger, Dal., 530; Burton v. Anderson, 1 T., 93; Andrews v. Hoxie, 5 T., 171; Davis v. Thorn, 6 T., 482; Willard v. Conduit, 10 T., 213; Bailey v. Heald, 17 T., 102 (holding that as to an indorser the place of indorsement governs); Whitlock v. Castro, 22 T., 108. Prior to Acts of January 18 and 20, 1840 (Gammel's Laws of Texas, vol. 2, pp. 177 and 182), legal rate of interest was 5 per cent. Huff v. Folger, Dal., 530; Chevallier v. Buford, 1 T., 503; Davis v. Thorn, 6 T., 482. See Rev. Stats. 1895, arts. 3097-3107.

and that it was correctly described. Proof of the loss of an instrument, accurately described in the pleadings in court, was sufficient evidence of its original existence to justify the finding of the jury. The existence and loss were both facts proper to be ascertained by the finding of a jury, and we do not feel warranted in reversing the judgment for want of evidence to support the verdict. In addition to this, the defendant in the court below had pleaded nil debet before he was aware of the loss of the note sued on, and the jury were justified in drawing from that circumstance a strong inference of the original existence of the note, for it is reasonable to suppose, that if it did not exist as a genuine instrument at the commencement of the suit, the defendant would have filed the plea of non est factum and thereby put the plaintiff to the proof of its execution.

As to the third point, that the name of the plaintiff was not stated in the petition in the manner required by the statute: This objection comes too late in this court, after the defendant having answered to the merits of the case, a verdict and judgment has been rendered against him. It should have been taken advantage of in abatement, and at the time when the defect—if defect it be—could have been remedied by amendment on motion; and as we are satisfied that there is enough in the record to be pleaded effectually in bar of any other suit on the same instrument, we think the objection wholly untenable. See sec. 16 of the Act to Regulate Proceedings in Civil Suits.

The only serious difficulty which has suggested itself in this case arises out of the fact that the loss of the instrument occurred after the suit was instituted upon it, and no amendment to the petition was directed by the court below, stating the loss of the note, so as to make the proof correspond to the allegations. The authorities upon this point appear to be contradictory. In the case of Smith v. Woodward, 4 East, 585, it was ruled, in debt upon bond, where the plaintiff declared upon the instrument, as if still in existence, and made a profert of it, he could not be permitted to prove the loss of the instrument, which occurred before the institution of his suit; and it was said by the chief justice, that if the loss had occurred after the bond had been declared upon, the plaintiff should move the court to postpone the trial and amend his pleadings to suit the circumstances. But this case has been overruled by the Supreme Court of the United States in the case of Renner v. Bank of Colombia, already cited, in which the judge who delivered the opinion of the court says, on this point: "It is objected lastly, that

---

**Note 52.**—Board of Land Commissioners v. Walling, p. 524.

[1] Mandamus can not be resorted to against the State without its consent. Hosner v. De Young, 1 T., 764; League v. De Young, 2 T., 497; Auditorial Board v. Arles, 15 T., 72, 75; Marshall v. Clark, 22 T., 23; H. T. Ry. Co. v. Randolph, 24 T., 317, 342; Ex parte Towles, 48 T., 413, 447; Taylor v. Hall, 71 T., 206; Thompson v. Baker, 90 T., 163.

[2] State can not be sued in her own courts without her consent, and then only in the manner indicated by special permission. Hosner v. De Young, 1 T., 764; Howard v. McSherry, 2 T., 311; League v. De Young, 2 T., 497; Bryan v. Sundberg, 5 T., 418; Marshall v. Clark, 22 T., 23; Rose v. Governor, 24 T., 496; Treasurer v. Wygall, 46 T., 447; Ex parte Towles, 48 T., 413, 447;

secondary evidence was not admissible without a special count in the declaration upon a lost note. The English practice on this subject has not been adopted in this country, as far as our knowledge of it extends, and to require a special count upon a lost note would be shutting the door against secondary evidence in all cases where the note was lost after declaration filed. We do not think any danger of fraud is to be apprehended from the admission of such evidence, under the usual count upon the note; and the practice of the court below not requiring any special count in such cases, no error was committed in the admission of the evidence."

The English decision seems to be founded upon the necessity existing there of making a profert in curia of a bond, and as the plaintiff could not show the bond upon oyer being craved, it became necessary to amend his declaration, by stating the loss of the bond, and thereby avoid the necessity of making a profert, or of bringing it into court. But in the case under consideration it was not necessary for the plaintiff in the court below to make a profert of the instrument sued on, and we therefore incline to lean on that account—as well as for other considerations unnecessary to be recited—to the American authority, and to decide that in the present case the want of such amendment of the petition is not a sufficient ground for the reversal of the judgment. Let the judgment below be in all things affirmed, with costs.

*Affirmed.*

## No. IV.

### WARD ET AL. v. BOON.

#### (See Note 63.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—Boon sued Ward, Linnecum and others in the District Court of Red River County at the spring term, 1842, in an action of trespass vi et armis, charging that the defendants had beat, bruised, and otherwise maltreated him, etc.; and laid his damages at $20,000. The parties were neither of them served to the first term of the court. At the subsequent or fall term, 1842, the writs were returned "executed" on all the defendants. Ward was served on the 25th of August, 1842. The term of the district court commenced on the first Monday in October thereafter.

At that term of the court, viz., on the 7th of October, Ward made an application for a continuance, on the ground that he had not been able to procure the attendance of his witnesses. W. Peacock, one of the witnesses, lived at the distance of sixty or sixty-five miles from the

---

Taylor v. Hall, 71 T., 206; T. M. Ry. Co. v. Jarvis, 80 T., 456; Thompson v. Baker, 90 T., 163. Statutes giving privilege to sue State are strictly construed in favor of the State, so as not to extend the privilege to those not clearly intended. Rose v. Governor, 24 T., 496. It seems that the same strictness is not required when suit is for assets of estates deposited with State.

courthouse. Afterwards, to wit, on the 14th day of October, Ward filed his supplementary affidavit, alleging the discovery on the day previous (the 13th), that one Robert Smith, a transient person, was a material witness, and praying for a continuance. The affidavit contained the usual necessary averments. Morton and Wilson at the same time filed their affidavit for a continuance, alleging that Robert Smith, a transient person, was a material witness for their defense; that they had only come to the knowledge of his materiality, etc., on that day.

The court overruled the several applications, whereupon came a jury, etc., who found the defendants guilty of the assault and battery, as charged in the plaintiff's petition, and assessed his damages at $1475 and costs of suit; upon which said verdict, the judgment of the court was entered, and the defendants gave notice of appeal. The statement of facts submitted presents also the following matter:

"During the progress of the trial in this cause, the plaintiff introduced Abner H. McKenzie as a witness. Upon the suggestion of said McKenzie that his testimony might render himself liable, and that therefore he hesitated to answer the questions, plaintiff in open court stated that he released McKenzie from all damages that he, McKenzie, was liable to him for, and in consideration of any trespass that he, McKenzie, committed at the time and place mentioned in plaintiff's petition. Witness then stated that at the time of the alleged trespass in plaintiff's petition, at the request of Linnecum, one of the defendants, that some one would lend said Linnecum a handkerchief, witness brought said Linnecum his handkerchief, with which said Linnecum blindfolded the plaintiff."

Defendants then moved that the suit be dismissed, which was overruled. Defendants then asked leave to withdraw their plea and plead a release puis darein continuance, which was overruled; to which defendants excepted.

There are two questions to be decided in this case.

1. Did the court below err in refusing the applications for a continuance?

2. Was the release of McKenzie such a release as would operate in favor of the defendants, who, it is alleged, were cotrespassers?

We are of opinion that an application for the continuance of a cause addresses itself to the discretion of the court, and is to be determined by the court with a proper regard to the circumstances of the case and the nature of the application. And this discretion, in whatsoever manner exercised, will not be revised by this tribunal. We believe that there is

Treasurer v. Wygall, 51 T., 621; Dodson v. Wortham, 18 T. C. A., 666. An individual sued by the State, can not set off claims against State, unless expressly authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snider, 66 T., 687; Sweatman v. Sanders, 85 T., 294, 300.

3 A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581 Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill

(562)

nothing in our statutes, or in the rules prescribed for the government of the district courts in regard to continuances, which would lead us to the adoption of a different conclusion. 1 Ala. (N. S.), 276; Hill v. Gayle and Bower, 2 Cond. Rep. (U. S.), 97, 172.

A release entered on the minutes of the court is not such a release as would be binding on the party. Had the witness McKenzie been incompetent from interest, such a release as was here entered would not have made him competent. 2 Porter, 401. A release should be signed, sealed and delivered to the witness to have made it binding. Id. But in this case the release was wholly without consideration and void, of course. If McKenzie had been in truth a joint trespasser, the statute of limitations had barred all right in Boon to maintain an action against him when called on to testify.

Let the judgment of the court below be affirmed.

*Affirmed.*

Concurred in by Judges Baylor and Morris.

Judge William J. Jones says: "I concur in the foregoing opinion, with the understanding, that the error of the judge (if any) may be reached by a motion for a new trial, which should be made by the party refused the continuance in the court below."

Chief Justice Hemphill says: "I concur in the result of the foregoing opinion, but dissent from that portion thereof which decides that the discretion of the court below in relation to continuances is final, conclusive, and not revisable by this tribunal, in whatever manner that discretion may have been exercised."

Judges Jack and William E. Jones say: "We dissent from so much of this opinion as decides that no appeal lies from the decision of a district judge in refusing to grant a continuance upon proper showing. We think the judgment in this case ought to be reversed and the case remanded for a new trial, on the ground that the district judge erred in not granting a continuance. On the other point decided we concur with the majority of the court."

---

v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith, intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Titles issued by alcaldes and commissioners after closing of Land Office, by Act of Consultation on November 13 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only

## No. V.

### Robertson v. McMillan.

(See Note 64.)

*Error from Robertson County.*

OCHILTREE, Justice.—Andrew McMillan, the defendant in error, sued Randall Robertson for possession and damages for the occupation of a certain tract of land situate in the county of Robertson.

An issue was made to the country. At the October term, 1840, a jury of twelve men, whose names are set forth in the record, came and were sworn and charged to try the issue joined, viz: James Schofield, Thomas Eaton, J. L. McMurray, R. H. Porter, Robt. M. Christian, Harrison York, S. B. Keloc, E. Donelson, Charles Sevier, James Hudson, J. C. McCristan, George W. Shirer. The jury, after the case had in due form been submitted to them, returned into court this verdict: "We the jury find the issue joined in favor of the plaintiff, and assess his damages to one dollar. (Signed) S. B. Kellough, Foreman."

Immediately in connection with which verdict is this judgment of the court: "Therefore it is considered by the court that the plaintiff recover his costs in this behalf expended, and the defendant," etc.

On the 10th September, 1841, the defendant sued out a writ of error in which was made the following assignments:

1. That from an inspection of the record there does not appear to have been a lawful jury impaneled to try the issue in the case.

2. The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar; and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages.

3. Assigns error in the execution which issued thereon, etc.

4. Assignment also relates to a proceeding subsequent to the judgment.

5. Assignment is, that the petitioner's counsel failed to except to an improper charge of the presiding judge, and asks the revising court to give him the benefit of the error now.

In the examination of this case we will confine ourselves to the judgment and the matters preceding. With the execution, or writ of habere facias possessionem, we have nothing to do. If those proceedings, or either of them, were erroneous, the party agrieved had his remedy in

---

establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75

the court below, from whose final judgment only the right of an appeal lies to this court. We will therefore proceed to a brief examination of the errors assigned, which are properly before us.

1. "From an inspection of the record, there does not appear to have been a lawful jury impaneled to try the issue in the case." We were more particularly informed by the argument as to what was considered by the plaintiff in error the objection to the jury than by the assignment itself. Indeed, from an examination of the record we find nothing approaching error in the impaneling of the jury, for it appears that there were twelve good and lawful men who came and were sworn to try the issue joined between the parties, etc. It is contended, however, that the name of the foreman who returned the verdict of the jury into court does not appear on the lost of jurors. In the list of names we find *S. B. Keloc*, and the name signed to the verdict is *S. B. Kellough*. Without following the learned counsel for the defendant in error in his ingenious argument upon the idioms of different nations, and the arbitrary pronunciation of those proteus letters, "ough," we will say that from all the concurrent circumstances, we are irresistibly led to the conclusion that *S. B. Keloc* and *S. B. Kellough* are one and the same persons.

We hardly think that the presiding judge would have permitted a substitute to have taken the prominent position of foreman of the jury, or that the astute counsel for the defendant below would have failed to have observed it and predicated a motion for a new trial or in arrest of judgment, for an error so glaring. We think it was a clerical error, and nothing more.

2. "The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar, and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages."

The verdict of the jury in this case is not a mere finding for the plaintiff; it goes farther: "We the jury find the *issue joined* for the plaintiff, and assess his damages at one dollar." Here is a manifest reference by the jury to the pleadings. What was the issue joined? The right of possession to the land, described in the plaintiff's petition and defendant's answer, as being the subject of dispute. A verdict, it is true, might have been rendered by the jury more descriptive and more technical; yet we believe that the manifest intention of the jury was to find that the land in contest was the property of the plaintiff, and we will not disturb it. It is considered by the court here, that

---

T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528), Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners and holders of unrecommended land certificates had no standing in court without it. Norton v.

inasmuch as the judgment of the court below does not respond to the verdict of the jury, the same be reversed, and that this court will proceed to render such judgment thereon as should have been rendered in the court below. It is therefore considered by the court, that the plaintiff in the court below do recover of the defendant below the premises, together with one dollar for his damages, and all his costs in this behalf expended; and that the proper writs issue to carry out this judgment.

*Reversed and rendered.*

## No. VI.

### J. & D. HOLDEMAN v. KNIGHT & WHITE.

#### (See Note 65.)

*Error to the District Court of Bastrop.*

JONES (WILLIAM E.), JUSTICE.—On the 20th August, 1836, Jesse and David Holdeman made their joint and several promissory note to James Knight and Walter C. White, for the sum of $5000, payable on the 1st day of January, 1838, and at the same time executed and delivered a mortgage to secure the payment of the note, upon a league of land on the Colorado River. At the spring term of the District Court for the County of Bastrop, for 1838, Knight, as surviving partner, and James A. White, as administrator of Walter C. White, filed their petition, praying judgment against the Holdemans on the note and a foreclosure of the mortgage. The defendants made no defense in writing, but demurred ore tenus to the plaintiff's petition, which was overruled by the court and a judgment nisi rendered against the defendants, which at a succeeding term, November, 1840, was rendered final, a decree of foreclosure made, and the mortgaged premises ordered to be sold. In March, 1841, the defendants below prayed a writ of error, which being granted, the proceedings are certified to this court for revision.

Five several grounds of error are assigned and relied on for a reversal of the judgment of the court below, which we shall consider in the order in which they are presented.

First. A misjoinder of parties plaintiff in joining Knight, the survivor, with the administrator of the deceased partner White. At common law it can not be doubted, that the surviving partner is the proper plaintiff in suits on behalf of the interests of the partnership, and that the administrator of a deceased partner could not be joined as a coplaintiff with the survivor. This suit was instituted before the introduction of the common law and before the Act of May, 1838, which prescribed the manner of foreclosing mortgages; and the points for our

---

Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Craw-

consideration must therefore be determined by the rules of the civil law, which was in force at the period of the institution of the suit. The want of civil law works is an acknowledged grievance of no small magnitude, and compels us often to make decisions upon important questions with but few of the authorities upon which the principles are settled. The case under consideration is one of that character, and as we can not have access directly to works which treat minutely of pleadings in the courts under that system, we are compelled to resort to the Louisiana decisions as likely to approximate nearest to those of the civil law. The principles of that system of laws in relation to partnership and the consequences of a dissolution are evidently materially different from those of the common law. In Morris's Heirs v. Ogden's Executor, 11 M. R., 455, it was determined that, "in an ordinary commercial partnership, dissolved by the death of a partner, his heirs have a right to participate with the surviving partners in the liquidation of the partnership affairs, till a partition takes place; and if one of the partners sues to recover a debt due the former firm, the others may be made parties for the assurance of their rights." And in Crozier v. Hodge, 3 L. R., 358, it was determined, that a partner *as such* had no right to sue for or recover debts due from the firm, after the death of a copartner. But the question now under consideration seems to have been directly decided in the case of Cutter v. Cochran, 13 L. R., 485, cited in Benjamin & Slidell's Digest, page 480, section 17, in which it was held that, "on the dissolution of a firm by the death of a partner, the surviving partner can not sue without joining the representatives of the deceased one." In England, where a mortgage is made to two partners and one of them dies, the right of survivorship incident to joint tenancy does not accrue, but an estate in common is created between the survivor and the heirs of the deceased (Rigden v. Vallier, 2 Vesey, 258); and it might therefore be doubted whether, inasmuch as the foreclosure of a mortgage is a chancery proceeding, it would not be proper in England to join the heirs of the deceased with the survivor, in seeking a decree of foreclosure. It is not however essential to our present purpose to decide such a question, as the principles of the English law have nothing to do with the point under consideration; and as the plaintiffs below admit that this was a partnership transaction, the doctrine above stated, which might otherwise apply to this case, is rendered inapplicable. We can not perceive, from all the authorities within our reach, that at the time of the institution of this suit it was improper to join the administrator of the deceased partner as a coplaintiff with the survivor. Nor

---

ford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time

can we perceive any possible injury which can result to the defendants below by such joinder; none of *their* rights are in any way affected or compromitted by it.

The second ground of error assigned is, that the administrator, if not improperly joined, did not make a profert of his letters of administration. This objection not having been made in the court below, it is too late to attempt to take advantage of it now, were it even deemed a necessary averment.

The third ground is, that the instrument prayed to be foreclosed is not a mortgage, and that it was executed by but one of the defendants, and that there was no proof of a partnership between them. The instrument on its face purports to be a mortgage; and although it is not in the usual form known to the common law, of an absolute conveyance by deed, with a condition to be void upon payment of the debt for which it is pledged, yet we can not look upon it as anything else but a mortgage of a strongly marked character. The parties appear to have been unusually circumspect in its execution in the presence of a large number of subscribing witnesses, and they expressly "pledge, hypothecate and mortgage" the land described in it, and stipulate that on failure to pay their debt, the judge having jurisdiction of such cases may order a sale of the premises to raise the money. The objection that it was executed by Jesse Holdeman only, and that there is no proof of partnership, is entirely obviated by the act of David Holdeman in his acknowledgment before the chief justice of Bastrop County, as notary public, that Jesse Holdeman was authorized to execute the instrument.

It is urged in the fourth place that there was a misjoinder of actions in praying for judgment on the note and a foreclosure of the mortgage in the same action; and that thereby the defendants were deprived of the right of a trial by jury. This ground is equally untenable with the others. It can not be denied that the plaintiffs had a right to proceed to judgment on the debt in a common law action, or to procure a decree in chancery for the foreclosure of the mortgage. A plaintiff may elect either remedy, or he may proceed with both concurrently. 4 Kent, 184. Where the chancery and common law jurisdictions are vested in separate tribunals, if he availed himself of both remedies it would necessarily have to be done in separate courts; but under our laws both jurisdictions are blended in the same tribunal, and as the plaintiff can have but one satisfaction, there can be no necessity for him to seek but one judgment, or be compeled to resort to two suits, in the event the mortgaged premises do not satisfy the debt. We are of the opinion that it is a correct practice to proceed at the same time, and in the same action,

---

allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April

to seek a judgment on the debt and a decree of foreclosure of the mortgage. The defendants can not complain that they were deprived of a trial by jury; they made no defense in the court below to the merits of the case and were therefore not entitled to a trial by jury; they relied both in that court and in this on technicalities, and it is too late to complain of being deprived of a trial by jury, which they never sought.

The fifth and last objection—that there is no judgment rendered in the court below upon which an execution can issue—is easily remedied by rendering such judgment here. A judgment nisi having been previously taken for the principal sum of $5000, with interest at 5 per cent per annum from January 1, 1838, and costs, and at the November term, 1840, the same having been made final, without computing the interest up to the judgment, and the same being defective, the court proceeds to render such judgment as should have been rendered below. It is therefore ordered, adjudged and decreed by the court here, that the judgment of the court below be set aside, and that the defendants in error in this court do recover of the plaintiffs in error the principal sum of $5000 debt, and the further sum of $703.33, interest up to the 23d November, 1840, with interest on the principal sum at 5 per cent per annum from the 23d November, 1840, until paid; together with costs of suit in this behalf expended. It is further ordered, adjudged and decreed, that the mortgage described in the petition of the plaintiff in the court below be foreclosed; and that the mortgaged premises in said mortgage described be exposed to sale in terms of the statute, and the surplus, if any there be arising from the sale, be paid to the appellants; and if there shall not be a sufficiency to satisfy this judgment, that the appellees have execution for the residue; and that this judgment be certified below for execution.

*Reversed and rendered.*

## No. VII.

### JAMES SMITH v. NATHANIEL TOWNSEND.

(See Note 66.)

*Appeal from Travis County.*

HEMPHILL, CHIEF JUSTICE.—The action in this case was instituted for the recovery of damages for alleged trespass on real property. During the progress of the trial an instrument was introduced purporting to be a copy of a public act of sale from one Jesse C. Tannehill to the plaintiff, which was objected to; and a bill of exceptions is filed in the record, containing all the points in controversy on which the action

---

25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev.

of this court is requested. The competency of the instrument as evidence is excepted to on the grounds:

1. That the instrument was not the original deed from Tannehill to plaintiff.

2. If it were, the same was not sufficiently authenticated.

Tannehill proved that he never signed the instrument referred to, but that he had conveyed the land therein described, by another deed signed by himself. It was in proof that such instruments were made out as second originals, in conformity to the then custom of the country; that the second original was never signed by the grantor or grantee, but by the judge of the first instance, or other officer, with instrumental and assisting witnesses, and that the same, when thus executed, etc., was the only evidence of title which the grantee received from the grantor.

The instrument, to the introduction of which exception was taken, has been sent up to this court for inspection, and purports to be a copy of a public act of sale, executed on April 25, 1835, in the town of Mina, before Thomas J. Gazley, judge of the first instance of the jurisdiction of Mina. It is certified to be a true copy of the original (with the addition of the plot), which remained in the office, under the charge of the said judge. The certificate was dated on the day of the execution of the original, and was signed by the said judge with two assisting witnesses.

In considering the first objection, we have to regret that the want of authorities in relation to the former laws of the country prevents us from attaining—on some of the points involved in this case—to conclusions which are altogether satisfactory. Guided, however, by the feeble and confused lights with which we are furnished, we proceed to decide this controversy, confining our opinion to the points which must necessarily be adjudicated.

No objection was taken to the act as not having been executed before a notary public, and any examination of the powers of a judge of the first instance to authenticate public instruments is therefore rendered unnecessary. It was treated as a notarial act and will be considered as such.

Is, then, a copy of a notarial act admissible in evidence without the production of the original? And if so, does the mere production of the instrument cause full proof of its contents, without evidence as to the capacity or signature of the notary and assisting witnesses?

In the case of the United States v. Perchman, 7 Peters, 51, the claimant offered in evidence a copy, from the office of the keeper of the public archives, of the original grant on which the claim was founded; and it

Stats. 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Reily, Dal., 381; Johns v. Republic, Dal.,

was decided, that on general principles of law, a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence. The seal and signature of the governor who made the grant was proved; and the judge in the court below added, "that where either party would suggest that the original in the office of the keeper of the public archives is deemed necessary to be produced in court, on motion therefor a subpœna will be issued by order of the court for said keeper to appear and produce the original for examination."

Justice Story in delivering the opinion of the court in Owings v. Hull, 9 Peters, 625, after noticing the high credit and authenticity of contracts and other acts executed before notaries in Louisiana and in all other countries using the civil law, proceeds to state, that "where a contract or other act is executed in a particular manner before a notary, the proctocol or original remains in his possession apud acta; and the act is deemed what is technically called 'an authentic act;' and a true copy by the notary, who is the depository of the original, or his successor, is deemed proof of what is contained in the original; for the plain reason, that the original is properly in the custody of the officer and not deliverable to the parties." He refers to the Civil Code of Louisiana from article 2231 to 2250. "It was decided that, the absence of the original being duly accounted for by its remaining in possession of the notary, the copy being *duly proved* was properly admissible in evidence."

In the case of Mitchell v. United States, 9 Peters, 732, objection was made to the admission of copies of certain acts of confirmation of Indian sales made by Governor Folet. It was not sustained. The court say, "that deeds of confirmation were made according to the rules of the civil law adopted by Spain, and in force in Florida and Cuba. The original is a record and preserved in the office, which can not be taken out; a testimonio, or copy, is delivered to the party, which is deemed to be and is certified as an original paper, having all the effect of one in all counties governed by the civil law." The instruments produced were regarded by the court as original deeds of confirmation. Their authenticity as public documents was proved, and the official signatures were established by the testimony of witnesses.

Adverting now to such Spanish works as are within reach of the court, we find Sala in his fourth book treating, but briefly, of the execution of public instruments and their force and effect when introduced in evi-

---

621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioners v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Applicant to establish headright claim under Acts of December 14, 1837, and February 4, 1841, was required to prove both actual residence at date of declaration of independence and continued residence to time of making application to establish claim. Republic v. Skidmore, Dal., 581; Jones v. Re-

dence.   We have not discovered in this work any satisfactory solution
of the question under consideration.   In Book 3, title 7, of the Institutes
of Aso and Manuel, page 297, it is laid down, that a "public instrument
is divided into three classes: the original draft, register, or protocol—the
original—and the copy.   The register is the original draft, or writing,
which is delivered and remains in possession of the escribano, which we
also call protocol; by which doubts are determined that may be offered
with respect to the instruments which are copied from it.   The deed
which is immediately copied from the protocol is the original, which
causes faith; inasmuch as it is authorized by the public escribano, before
whom it passed, or by him to whom the protocols of the latter have
passed; but if another escribano copies it, with the authority of the
judge and citation of the party, it is valid."

In 3 Partidas, title 19, Law 9, notaries are required to have a book
to serve as a register, in which they must write the minutes of every
act required by the contracting parties; from which they draw up the
public act itself and deliver it to the person entitled thereto.   In a note
to this law a decree is referred to, from which doubtless may be deduced
the practice of executing notarial instruments as known to this country
under its former laws and governments.   In this decree, dated in 1503,
notaries were required to draw up on their registers the original act in
full, and not by notes or minutes.   A copy is then furnished the party
to serve him instead of the act itself, which was formerly made out
from such notes.   Febro. Lib. Escrie, chap. 16, Nos. 3, 9.

From the authorities and laws to which we have referred, as well as
from the facts proven in this case, we conclude that copies of notarial
acts were (at the time of the execution of this instrument) regarded
in contemplation of law as originals; that they were the only evidence
of title which the party interested was entitled to retain in his posses-
sion, and that they are properly admissible for all the purposes which
by the introduction of the originals themselves could be effected.   In the
cases of Perchman and Mitchell et al., cited from the United States
Reports, proof was made of the official seal and signature of the public
officer from whom the copies emanated; and in the case of Owings v.
Hull the copy of the notarial act is described as duly proven.   In the
case before us, no objection was urged on the ground that proof was
not made of the official capacity and signature of the judge, or of the
signatures of the witnesses.   The court at which the trial below was
had was within the limits of the territory once designated as the juris-
diction of Mina, and the facts above alluded to were perhaps matters of
public notoriety, and proof of them was not required.   We confine our-
selves however to the grounds on which this appeal was taken, and will

public, Dal., 621; State v. De Casinova, 1 T., 401; Grooms v. State, 1 T., 568;
Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Land Commis-
sioners v. Riley, 3 T., 237; Paschal v. Perez, 7 T., 348; Jones v. Montes, 15
T., 351.   Under Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p.
635), applicants for headright claims were required to make same proofs as
under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404).
(572)

not enter into the question of the ·proofs, which under many circumstances might be required, to establish the authenticity of copies of public instruments; nor will we enumerate the cases in which the production of the originals might be deemed essential, nor the causes for which their validity might be attacked and destroyed.

These and similar questions will be disposed of when they properly arise in cases which may be presented for our consideration.

The second objection urged in the bill of exceptions is, that the instrument before us is not sufficiently authenticated.

This is vague and indefinite in its terms, and no notice having been taken of it in the argument, we can not ascertain with any certainty the grounds on which it was raised. There being no glaring defect of authenticity in the instruments and none being pointed out for the inspection of the court, we will pass over this point without further remark or attention. The law and facts of this case being considered, we are of opinion that the court below did not err in admitting the instrument excepted to; and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

*Dismissed.*

## No. VIII.

### CORPORATION OF BASTROP V. GILMORE AND REDDING.

*Appeal from Travis County.*

HEMPHILL, CHIEF JUSTICE.—In this case, judgment being given for defendants in the court below, the corporation appealed and (as stated in the record) entered into bond and security for the costs according to law. No copy of this bond was sent up with the transcript, and the appellees not having appeared in court and waived any rights to which they are by law entitled, we are of opinion that the case is not properly before us for adjudication, and it is therefore, ordered that the same be dismissed.

*Dismissed.*

## No. IX.

### ROBERT HAMILTON V. BATTLE AND FORT.

*Appeal from Bowie County.*

JONES (WILLIAM E.), JUSTICE.—This was an action commenced by the appellant, Hamilton, against the appellees, Battle and Fort, in the court below on an instrument in writing expressed in the following

---

State v. De Casinova, 1 T., 401; Babb v. Carroll, 21 T., 765. The power of district courts to hear and determine headright claims was special, and a strict and literal compliance with all conditions, restrictions and limitations on this power was required to give jurisdiction. As a general rule, the suit

words, viz: "In the month of February, 1843, we or either of us promise to pay to Wm. B. Hawkins, his heirs or assigns, four thousand dollars worth of ginned cotton, at eight cents per pound, for value received of him; the said cotton to be of the best quality made by us and to be delivered at McKinney's, or J. W. Fort's landing. Given under our hands and seals this 16 December, 1841. Owen D. Battle (Seal.) J. W. Fort (Seal)."

This written instrument was transferred by assignment on the 18th day of January, 1842, by the obligee, Hawkins, to the appellant in this case. The defendants in the court below plead tender by defendant Battle and refusal by Hamilton, the assignee.

The evidence as sent up to this court in the statement of facts is substantially as follows: That in the month of February, 1843, Battle delivered at M'Kinney's landing 120 bales of cotton, being his entire crop; out of which he weighed out 107 bales, making in the aggregate over 50,000 pounds of ginned cotton, which he set apart and tendered to the authorized agent of Hamilton; at the same time offering him choice out of the remaining thirteen bales, in lieu of any portion of that set apart for him. The agent refused to accept it in payment of the debt, saying that Hamilton considered the note a joint one and that he had a right to a selection out of the crops of both defendants. There was no positive proof that the defendant Fort raised any cotton, the only testimony on that point being that of one witness, who stated that he saw a few bales of cotton at Fulton, marked "J. W. Fort," and was told by Fort that it was his and that it was very good cotton.

Upon this evidence the jury returned a verdict for the defendants in the court below, and a judgment was rendered thereon accordingly. The counsel for Hamilton moved the court to grant a new trial on the ground, "that the jury found against the law and evidence in the case and against the charge of the judge." That motion being overruled, Hamilton appealed to this court.

It is insisted by the counsel for the appellant that "by the evident terms of the agreement he was entitled to a selection out of both crops of the appellees;" and that although it is conceded that either defendant might pay the debt, "yet it must be done in accordance with their agreement, by tendering cotton of the best quality out of both their crops;" and as the evidence disclosed the fact that a tender was made by but one defendant and out of but one crop, that therefore the verdict of the jury was against the law and evidence of the case; that the judgment ought to be reversed, and such judgment rendered by this court as should have been rendered by the court below.

Although the technicalities and circumlocution of special pleading as

could only be brought in the county where the claimant resided at the time of the passage of the law authorizing suit. State v. Manchaca, 1 T., 586; Jones v. Menard, 1 T., 771; State v. De Casinova, 1 T., 401; Linn v. State, 2 T., 317; Kempner v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Jones v. Borden, 5 T., 410; Capp v. Terry, 75 T., 391; Mexican Ry. Co. v. Jarvis, 80 T., 456.

(574)

practiced under the common law have been discarded in this Republic
by statutory provisions, yet it is not to be understood that recoveries
can be had in our courts except in accordance with the state of the plead-
ings; nor is the plaintiff absolved from the necessity of setting out in
his petition, fully and substantially, the grounds of his complaint upon
which he seeks a judgment in his favor. In actions upon bonds and
notes payable in specific articles, it is necessary for the plaintiff, in order
to convert it into a money demand, to allege, clearly and substantially,
the failure or neglect of the defendant to perform the contract by the
delivery of the specific property in accordance with the terms of the
contract, and his own right to recover money consequent upon that
failure. In all such cases the obligor or promissor has his election of
either alternative—to deliver the property at the time and place specified
in the contract, or to pay the money. It is only upon his failure to per-
form the first alternative that the obligee's or promissee's right to re-
cover the money can accrue; and however clear that right may be, how-
ever well grounded his cause of action, he can not recover beyond his
allegations of the defendant's nonperformance. In the case under con-
sideration, the appellant, after setting forth in his petition the terms
of the contract and its assignment to himself by the original obligee,
alleges the nonperformance of the appellees in the following manner,
viz: "And the said plaintiff avers that the said defendants, or either
of them, hath not as yet paid said sum of $4000 in good ginned cotton
delivered at M'Kinney's or J. W. Fort's landing, or any part thereof, as
they were bound to do; although often requested so to do." Now it will
be readily perceived that he does not allege in his petition the breach of
the covenant or promise upon which he relies in this court for a reversal
of the judgment. He insists in this court upon his right to recover the
money, because he was entitled to a selection out of the crop of both the
appellees, whereas he was tendered but one crop for his selection. Were
it deemed necessary, it could easily be demonstrated that he was entitled
to no such selection; that such a right is not deducible from the terms
of the contract; but he does not allege in his petition that he was denied
the privilege of selection; he does not set *that* up as a breach of the de-
fendant's obligation, by which he is entitled to demand and recover the
money; and not having averred it, he is not entitled to recover for any
such breach, if it had occurred. Nor is it alleged in the petition that
the defendants had failed to deliver "cotton of the best quality raised

---

**Note 53.**—Gregg v. York, p. 528.

Is a harsh and summary remedy and all precedent conditions must be
strictly complied with. Raquet v. Mixon, Dal., 386; Fowler v. Poor, Dal.,
401; Sloo v. Powell, Dal., 467; Sydner v. Chambers, Dal., 601; Wooters v.
McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T.,
317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson
v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532;
Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Het-
mann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1
App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Bur-
ton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presump-
tion will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T.,

by them or either of them." He alleges simply, "that they had failed to deliver good ginned cotton." Such is the issue tendered by him in his petition and he must abide the event of that issue. He can not call upon this court to give judgment upon issues never made in his pleadings in the court below; he can not expect to recover of the defendants upon allegations which he has never called upon them to answer. The testimony discloses the fact that he refused the tender, not because the cotton tendered was not good, but because the privilege of selecting out of both crops was not tendered to him. There is nothing in the evidence to induce the belief that the cotton was not such as he alleges a failure on the part of the appellees to deliver; and as that was a question proper to be ascertained by the verdict of a jury, we see nothing in this record to justify us in reversing the judgment.

Nor is it necessary here to enter into a discussion as to the construction which should be given to the obligation upon which this suit was instituted, or the capacity of either defendant to discharge the debt by a tender out of his own crop alone. Such a discussion is not rendered necessary by the state of the pleadings in the district court. It will be sufficient to add to what has already been said, that, admitting as the appellant contends that the obligation was *several* as to the persons only who might make the actual tender, but *joint* as to the fund out of which the tender should be made, and that the appellant was entitled to a tender of cotton of the best quality raised by both the appellees, we should not still be justified in reversing this judgment; for it does not appear to have been satisfactorily shown to the jury that any other cotton was raised by them, other than that which was tendered to the appellant; nor does it appear that if any other was raised by them it was of a quality inferior to that which was tendered. Let the judgment of the court below be affirmed with costs.

*Affirmed.*

Judge Morris says: "I dissent from both the points decided in this case."

Judge Ochiltree says: "I concur in the result of this opinion of my brother Jones and generally in the reasoning; there are some minor points in the case on which I entertain opinions variant from those herein contained."

610; Focke v. Hardeman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

**Note 54.**—Huff v. McCreary, p. 528.

Plaintiff must have notice of rule for costs, in order to visit upon him the consequences of failure to comply with same. Houston v. Sublett, 1 T., 523; Clute v. Ewing, 21 T., 677, 679; Holshousen v. Hollingsworth, 32 T., 86; Marks v. Fields (T. C. A.), U. R. C., 1895; Frazer v. Moore (T. C. A.), U. R. C., 1902. Entry of rule on judge's docket is not sufficient notice. Motion should be made and entered on motion docket. Shackelford v. Wallace, 4 T., 239; Marks v. Fields (T. C. A.), U. R. C., 1895. Rule for costs may be entered at any time before final judgment. I. & G. N. Ry. Co. v. Williams, 82 T., 342; Frazer v. Moore (T. C. A.), U. R. C., 1902. May be complied with at

## No. X.

### H. H. WILLIAMS & CO. v. GAIL BORDEN, COLLECTOR.

*Appeal from Galveston County.*

HEMPHILL, CHIEF JUSTICE.—The questions arising in this cause are novel in their character, involve interests of immense magnitude, and affect deeply the energies and operations of the government itself. We have experienced considerable difficulty in forming an opinion, and have hesitated long in its expression. Owing to the intrinsic difficulties presented for our solution, to the shortness of the period elapsing since we have received the additional argument, to the enfeebled condition of the health of several of the judges, and other like circumstances, we will be unable to deliver an opinion containing at length and in detail the reasoning in support of the conclusions to which we have arrived. In the meantime considerations of public interest, forcible in their character, urge us to state these conclusions and generally some of the grounds on which they are based.

We are of opinion, then, that the court below did not err in sustaining the demurrer of the defendant.

The correctness of the judgment is founded on the constitutionality of the act "To regulate the collection of impost duties," approved July 23, 1842. We have examined the provision of the act complained of by the appellant, and do not regard it as in conflict with the Constitution. This opinion is founded on a due consideration of the various grants of power by which Congress is authorized "to levy and collect taxes and imposts, excise and tonnage duties; to regulate commerce, coin money, and regulate the value thereof;" and also on the general authority of Congress "to pass all laws which may be necessary and proper to carry into effect the express grants of power." The statutory provision complained of does not, it seems to us, transcend the limits which are proper for the exercise of the foregoing powers; and it is also sustained and supported, as being within the scope of the attributes of sovereignty which is vested in this as in other independent governments.

For these and other reasons which will hereafter be set forth at length, we are of opinion that the judgment of the court below should be sustained, and it is ordered and adjudged accordingly.

*Affirmed.*

Judge William J. Jones dissenting.

---

any time before case is dismissed. Cooke v. Beasley, 1 T., 591; Rhodes v. Phillips, 2 T., 162; Hayes v. Cage, 2 T., 501; Cooke v. Ross, 46 T., 263; Bateman v. Maddox, 86 T., 553; Posey v. Aiken, 17 T. C. A., 44. After rule has been complied with, plaintiff can not be ruled for additional security without notice and affirmative proof that the security given is insufficient. Houston v. Roberts, 10 T., 348; Holshousen v. Hollingsworth, 32 T., 86. When defective new bond may be given, if no notice is taken of the defect for several terms, court may disregard motion to dismiss. Herndon v. Rice, 21 T., 455. Case dismissed for failure to comply with rule should be reinstated upon a

## No. XI.

### JOSEPH HARLAN v. JOHN BAKER, USE JOHN WELCH.

(See Note 67.)

*Appeal from Robertson County.*

JONES (WILLIAM J.), JUSTICE.—On the 12th day of June, 1838, Joseph Harlan executed his note to John West or bearer for $300, payable as soon as said West could make him a good and sufficient title to one-third of a league of land. The plaintiff in the court below avers that West, oftentimes before the institution of the suit, offered to make Harlan the title stipulated in the bond (produced on the trial in the district court and referred to in the note sued on), but which the appellant refused to accept. The land certificates (described in the bond) were placed in the hands of appellant for location, entry and survey.

The plaintiff below further avers that Harlan not only neglected and refused to perform his part of said agreement, in preparing the surveys of the land for patent, but willfully abstained therefrom to avoid the payment of his note.

The note sued on was assigned by the payee to John Baker on the 24th day of October, 1838.

The defendant filed a general denial.

The agreement of West and Harlan, produced on the trial below, contains mutual covenants. The former obligated himself for the consideration of $555.37 (of which the note in suit was part) to make a good and sufficient title to the latter for one-third of a league of land, as soon as the patent could be obtained. Harlan was required in the bond to locate the land within the time of preference given to first class of headright claimants, unavoidable accidents excepted.

John West, the payee of the note, was offered by the appellee as a witness, under a full release from the plaintiff in interest of all responsibility in consequence of his indorsement of the note. The defendant excepted to his testimony upon the ground of interest, which was overruled by the court.

It was proved that one of the certificates, No. 84, was deposited in the office of the county surveyor of Robertson County, and that under it the defendant had made a fractional survey on the 10th day of January, 1841.

The jury found for the plaintiff the full amount claimed in his petition.

The first ground of error, assigned by the appellant, is the introduction of the original payee of the note as a witness in the court below, without

reasonable showing why the rule had not been complied with. Bank v. Hudgeons, 3 T., 9; Shackelford v. Wallace, 4 T., 239; Frazer v. Moore (T. C. A.), U. R. C., 1902. Sickness of plaintiff and his attorney, ground for postponing dismissal. Cook v. Ross, 46 T., 263. Judgment of dismissal for failure to comply with rule may be appealed from. Shackelford v. Wallace, 4 T., 239; Miller v. Holtz, 23 T., 138. Case will not be reversed merely on ground that court erred in dismissing for failure to comply with rule. Cooke v. Ross, 46 T., 263. On dismissal, defendant is entitled to judgment for costs.

a full release from the plaintiff of *record* for costs, as well as principal of suit and all responsibility which might subsequently arise; and that the release executed is not a full and entire discharge of the disqualifying interest.

The second cause of error assigned is, that the court below did not instruct the jury that the obligation of the defendant to locate land related to *one* only of the certificates mentioned in the agreement of West and Harlan.

Upon the first ground of error the general rule of law is, that the objection to the competency of the witness on the score of interest or responsibility is removed by an extinguishment of such interest or responsibility, through the means of a release executed by those who would have a claim upon him.

Another principle of 'law equally well established is, that evidence can not be excluded by refusing assent to a release tendered to a witness from the party who holds the right to discharge him from responsibility, if offered before the witness has delivered his testimony.

A release of all the liabilities of the witness, arising from or connected with the principal cause of action, is a *full* release of *all* the *interest* which the witness had or could possibly have of a pecuniary character, or that would under the law exclude his testimony. Any interest, by way of desire to see the plaintiff succeed, must go to his credibility, and not to his competency.

The release in the case before us is, "from all liabilities which he (the witness) may be under to me (the plaintiff in interest) in consequence of his assignment or indorsement upon a certain note (the note sued on) given by Joseph Harlan on the 12th day of June, 1838, to John West, the witness;" and goes on to set forth the amount of the note and the consideration for which it was given. This, then, is the release contemplated by the law, and it is a total· discharge from all liability to pay the sum sued for (costs included) to the plaintiff in interest, under any possible contingency.

Another objection taken by the appellant, as connected with the first error assigned, is that the release, if sufficiently comprehensive in its terms, was not signed by the proper party to the suit.

The language of the law is, that the release shall come from "the party who would have a claim upon the witness." 1 Starkie, 125. This note is payable to John West, or bearer. Who, then, is the party in this case. to set up a claim against the witness, if there had been a failure to recover against the appellant? The bearer, John Welch, surely. Then the bearer, John Welch, was the only proper person to execute the release.

---

Anderson v. McKinney, 22 T., 653. Rule for costs does not suspend preparation for trial. Anderson v. McKinney, 22 T., 653. Affidavit of inability to pay or give security, discharges rule for costs. Hickey v. Rhine, 16 T., 576; Hubby v. Harris, 63 T., 456; M. P. Ry. Co. v. Richmond, 73 T., 568. But it does not relieve affiant from liability for costs. McPherson v. Johnson, 69 T., 484; Harby v. Patterson (T. C. A.), U. R. C., 1900. Affidavit may be made by next friend or plaintiff's attorney, but not by wife. Brooks v. Hicks, 20 T., 666; Crockett v. Maxey, 4 App. C., sec. 292; S. L. S. W. Ry. Co. v. Wil-

We can not travel beyond the record to determine whether the second assignment of error (that the court failed to give the proper instructions to the jury explanatory of the evidence) can more avail the appellant than the point already disposed of.

We do not discover from the statement of facts sent up by the district judge that any special instructions were asked and refused upon the point made in the appellant's brief. The record contains no charge upon the law of this case. We must then presume that the judge gave the jury all the instruction as to the law which he considered necessary, as no exceptions appear to have been taken at the trial.

The instrument sued on and the agreement of the parties in relation to the location, survey and patent of the land, were matter of evidence before the jury. The bond or agreement of the original parties was in itself sufficiently explanatory, to the ordinary understanding, of the obligations of the appellant. The survey of the third of a league of land (to which the payee of the note bound himself to make the appellant a title) was, by the provisions of said agreement to be made with two land certificates, Nos. 84 and 85. The latter not containing the 1481 acres which were to be conveyed, the deficiency was to be taken from the former certificate. Hence the necessity and propriety of evidence relating to certificate No. 84, which the appellant assigns as error.

These were the facts gathered by the jury from the papers submitted to them, as we understand from the record; and if there were any ambiguity proper to be removed by the judge which was not done, it was the duty of the appellant's counsel to have required a special charge of the court upon the matter thus brought to its notice, which, if refused, might have been appealed from.

Where the contrary is not made to appear from the record, the appellate court will presume, that a full charge upon all the law of a case was given by the judge of the district court on the trial below.

It is the duty of counsel when the law of a case, in their opinion, is not fully defined to the jury, to require of the court, in writing, a special charge upon the point or points; and if refused, to bring them up by way of exception or appeal. And if given and objected to by the opposite counsel, to be alike noted by him and brought up for revisal.

It is then considered by the court here that there was no error in the proceedings of the court below, and that the judgment be fully affirmed with costs.

*Affirmed.*

liams (T. C. A.), U. R. C., 1896. Can not be made before a notary public of another State. Jenks v. Jenks, 47 T., 220; Thames v. Chitwood, 24 T. C. A., 391. If affidavit is defective, the defect should be pointed out by motion to dismiss for insufficiency. It is not defective because it fails to name one of the defendants. Hubby v. Harris, 63 T., 456. Quaere—Can defendant without being joined by clerk contest affidavit? Railway v. Duncan, 10 T. C. A., 479. Refusal of court to sustain contest is immaterial when plaintiff recovers. Railway v. Duncan, 10 T. C. A., 479; Wright v. Solomon (T. C. A.), U. R. C., 1898. Limitations do not run until filing of affidavit. G. C. & S. F. Ry. Co. v. Knott, 14 T. C. A., 158. On appeal by defendant in justice court, plaintiff can not be ruled for costs in county court. Foreman v.

## No. XII.

### THE REPUBLIC OF TEXAS V. A. SKIDMORE.

(See Note 68.)

*Appeal from Red River County.*

BAYLOR, JUSTICE.—Skidmore commenced his suit against the Republic in the court below upon a certificate of headright, for the recovery of one league and labor of land, which certificate had been rejected by the investigating board of land commissioners.

The petition contains the usual allegations in such cases, and upon issue joined he obtained a verdict and judgment in his favor for the quantity of land claimed in his petition. To reverse which the Republic prayed an appeal, and assigns for error here, that the verdict is against the law of the case and the evidence adduced on the trial.

The evidence certified to by the judge below is as follows:

"Skidmore came to Texas in February, A. D. 1836, and remained until June of the same year. He left, stating that he intended to return, and did so in April, 1839. Whilst here in 1836 he performed all the duties incident to a good citizen. Upon his return he laid claim to a selection of land made by him in 1836. When he left in 1836, he left (with the intention, as stated by himself, of going for his family; and upon his return he brought his wife and children with him. He also proved by two witnesses that at the date of the declaration of independence he was a married man and the head of a family.

"The Republic upon cross-examination proved by the same witnesses that the family of Skidmore were at that date residents of the State of Alabama, in the United States of North America."

In considering the question whether the verdict of the jury ought to be set aside as incompatible with the evidence and law of the case, we do not deem it necessary to go into all the refined and subtle distinctions as to domicile. It is sufficient to say that in order to make a man a resident citizen within the meaning of the Constitution, he must have resided at the date of the declaration of independence within the Republic, with the *intention* (animo manendi), and that if he left it, he must have quitted the country animo revertendi. Testing the appellee's case by these principles, we think the foregoing statement of facts is too vague and loose to sustain his claim.

There is no satisfactory evidence by two witnesses, as the law requires, that his residence was in this country at the date of the declaration of independence. The record, it is true, states that Skidmore was here at that time; but it is silent as to how that fact was proved. It also states

Gregory, 17 T., 193; Miller v. Holtz, 23 T., 138; T. & P. Ry. Co. v. Taylor, 2 App. C., sec. 418; T. & P. Ry. Co. v. Cook, 2 App. C., sec. 659; Taylor v. Brewing Assn. (T. C. A.), U. R. C., 1897. Same rule on appeal from probate court to district court. Pierce v. Pierce, 21 T., 469.

that he stayed in the country a few months and performed all the duties incident to a good citizen. What those duties were, we are not informed and are left to conjecture.

By his own showing, he was not incumbered with a family; and it is certain, during his stay in the country, Texas expected every man to do his duty. There was nothing, so far as we are informed by the proof, to have prevented Skidmore from rendering military services during that eventful period. Had he performed such meritorious acts, it would have gone far to show that Texas was indeed his adopted country, and that he was not a mere sojourner in the land. Nor can much reliance be placed on his loose and idle declarations, that he intended to return to Texas. Actions speak louder than words. Skidmore's long absence from the country, and that absence being totally unaccounted for by the proof, together with the fact that his home, family and property were in Alabama during all that time, lead us irresistibly to the conclusion that he had not at the date of the declaration of independence made this country his residence animo manendi; and that when he left it, he did not do so with the *certain intention of returning.*

This court has repeatedly determined that it would not in ordinary cases disturb the verdict of a jury unless it was manifestly against the evidence produced on the trial. But the appellee's case is one of that class of cases in which a great national policy is to be effected and carried out; and in doing this, we must take special care to construe the Constitution and laws so that those who receive the bounty and munificence of the government shall give us that increase of population contemplated by the law, within a reasonable time, and the services of its citizens when needed in the hour of trouble and of danger.

Skidmore came to the country, made a selection of land, stayed but a few months, then returned to his home, family and property in a foreign land, there remained with them for nearly three years, without accounting for his long absence. Under such circumstances, to give him all the benefits of a headright claimant of the first class would be a dangerous precedent, situated as our country is, and most disastrous in its consequences to its best interest and happiness. Persons claiming to be emigrants must understand that such equivocal conduct, as evinced in this instance, relative to their *inhabitancy, intention of remaining and returning* to the country, will not entitle them to the liberality of this Republic.

But it is said this decision conflicts with the decision made in the case

---

**Note 55.**—Huff v. Filger, Lamb & Co., p. 529.

[1] Interest is a creature of local law and governed by the law of the place where the contract is made. Trott v. Patton, Dal., 522; Burton v. Anderson, 1 T., 93; Andrews v. Hoxie, 5 T., 171; Davis v. Thorn, 6 T., 482; Willard v. Conduit, 10 T., 213; Bailey v. Heald, 17 T., 102 (holding that as to an indorser the place of indorsement governs); Whitlock v. Castro, 22 T., 108. Prior to Acts of January 18 and 20, 1840 (Gammel's Laws of Texas, vol. 2, pp. 177 and 182), legal rate of interest was 5 per cent. Trott v. Patton, Dal., 522; Chevallier v. Buford, 1 T., 503; Davis v. Thorn, 6 T., 482. See Rev. Stats. 1895, arts. 3097-3107.

[2] Nature, validity, obligation, construction and interpretation of contracts

REPUBLIC OF TEXAS v. SKIDMORE.

of The Republic v. Young. In that case, it is true, the court went a great way in sustaining Young's claim. They gave the Constitution and laws the most benign and liberal construction they could possibly bear. We think, however, there is a marked difference between the two cases. Young was here, with the intention of remaining in the country, as we thought, at the date of the declaration of independence, from the following circumstances. He returned to Mississippi, where he had left his family without any fixed habitation; he had broken up his home previously to coming to this country; sold all of his real estate and so much of his personal property as he could not conveniently bring with him to Texas; he returned to the country without delay where he has remained ever since, subject to taxation and to do military duty. There is another clear distinction between the two cases. Young resided in this country from the date of the declaration of independence until the passage of the land law in 1837, with the exception of his temporary absence to the State of Mississippi, with the view of bringing his family to Texas. This temporary absence, under the facts and circumstances of his case, did not in our opinion preclude him from bringing himself within the provisions of the twelfth and seventeenth sections of that law. The twelfth section requires the applicant for land to prove that he was actually a citizen at the date of the declaration of independence, and has continued so up to the time of the passage of the act. The seventeenth section provides, in all cases, that the claimant shall apply for his certificate of headright in the county in which he or she may reside at the date of the passage of the law; which was on the 14th of December, 1837. At the date of this act, Skidmore had no fixed residence in any county within this Republic; neither could he comply with the requirements of the twelfth section, for he did not return to Texas until April, 1839, long after the passage of the act of 1837. From these considerations, he is clearly not entitled to the benefits of the land law of 1837. The traveling board of land commissioners therefore did right in rejecting his certificate for one league and labor of land. See Board of Land Commissioners v. Walling, decided by this court in 1843.

Upon the whole, to sustain the verdict and judgment in this case would be going, in our opinion, one step further than the court went in the case of The Republic v. Young, and this we do not feel inclined to do, especially as some of the members of the court were not entirely satisfied with the doctrines laid down in that case. It is therefore the opinion of a majority of the court, that the verdict and judgment of the court below be set aside, annulled and reversed, that the case be remanded, and a

are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Tinnen v. Mathews, Dal., 491; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T., 54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thomp-

new trial awarded in the court below, in order that the appellee may show by additional proof, if he can, whether he be entitled to the amount sued for, or a less quantity; that he be permitted to amend his petition to meet the circumstances of his case, and that he pay the costs in this court expended.

*Reversed and remanded.*

Judge Morris says: "In concurring with the within opinion, I do not wish it understood that any opinion is expressed by me on the point which seems set forth in the reasoning, that it might be and is necessary that a party should be *actually present* in the country at the time of the passage of the land law of 1837."

## No. XIII.

NATHANIEL M. RIKER, SURVIVING PARTNER OF ABRAM RIKER, DE-
CEASED, v. J. P. FREEMAN & CO.

*Two Cases. Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—These cases come up by appeal from the District Court of Red River County, and present the following facts: A. Riker & Co. drew a bill of exchange on the 20th day of September, 1836, in New Orleans, payable twelve months after date, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $272.22; also one other bill of exchange, drawn by the said A. Riker & Co. on the 20th March, 1837, in New Orleans, payable twelve months thereafter, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $539.11. Upon these bills of exchange, two suits were instituted by the appellees in the District Court of Red River County against the appellant.

Upon the trial in the court below the defendant filed his demurrer to the petition of the plaintiffs, which was overruled. One ground of demurrer, inter alia, was the want of the averment of notice of nonpayment, prior to the institution of suits by the holders.

In the examination of the authorities upon this important branch of commercial law by which these cases are to be determined, we find it well settled, that in order to entitle the holders to a suit against the drawers, they must show a demand of the drawee and reasonable notice of default of payment; and to enable the holders to prove notice of demand and failure to pay, the allegations must be plainly and distinctly set forth in their petition.

son, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different states, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the

It is unnecessary for the court, in these cases, to go into the investigation of what may be considered reasonable notice, as no notice appears to have been alleged by the plaintiffs or attempted to be proven.

The isolated question is then presented: Could the plaintiffs in the court below recover upon the bills sued on, in the absence of the allegations of demand and notice of nonpayment, duly supported by proof? We think not.

There is no portion of the law relating to negotiable paper which has been more fully discussed and clearly defined than that fixing the responsibility of drawers and indorsers, and the circumstances either positive or negative which release them. Why is notice of nonpayment in these cases considered necessary? Let the authorities answer.

In 3 Kent, 104, it is said that the object of notice is to afford an opportunity to the drawer and indorsers to obtain security from those persons to whom they are entitled to resort for indemnity. In 14 Martin, 541, it is decided by the Supreme Court of Louisiana to be obligatory upon the holder of a bill to present it and give notice of its dishonor, to entitle him to sue the drawer. In Bayley on Bills, 286, the doctrine of notice is thus broadly laid down: "that the drawer of a bill and every indorser is, prima facie, entitled to bring an action on paying it, and therefore can insist on a want of notice."

There are some excepted cases in which notice is not necessary, as where payment is refused for want of funds. But if the plaintiffs rely on proof of the want of funds in the hands of the drawee to excuse notice, it is equally necessary that their petition should contain that averment.

We may then regard it as settled, that to enable the holder to recover against the drawer of a bill of exchange, he must aver in his petition and prove upon the trial presentation for payment and notice of dishonor, or the want of funds in the hands of the drawee, to excuse him therefrom; otherwise he must fail in his action.

It may be proper here to remark, that the right of action against the drawer accrued to the holders before the passage of the act of Congress, approved January 25, 1840, which dispenses with protest and notice.

The plaintiffs in the court below not having set forth in their petitions that notice of nonpayment had been given to the drawer, nor averred a want of funds in the hands of the drawee to excuse such notice, and the defendant having demurred to plaintiff's petition for the want of the

---

lex loci rei situs governs. A mortgage executed without the State, contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

necessary allegations, and the demurrer having been improperly over-ruled, it is considered by this court that the demurrer be sustained and the judgment of the district court annulled and reversed; and that the cases be sent back, with directions to the district court to allow the plaintiffs to amend and proceed to trial upon the merits of their cause.

*Reversed and remanded.*

## No. XIV.

### HAMILTON V. BLACK, ADMINISTRATRIX.

#### (See Note 69.)

*Appeal from Red River County.*

MORRIS, JUSTICE.—Jacob Black, who died pending this action and whose administratrix is now in court, filed his petition in the District Court of Red River County, alleging indebtedness on the part of one Hamilton to him in the sum of $3500, on a promissory note or writing obligatory bearing date the 1st day of January, 1835, and payable twelve months after date; filing his note and praying that it be made a part of the petition. His petition was filed on the 24th of March, 1840, and at the September term, 1840, process having been served, the defendant, Hamilton, appeared and filed an answer in the nature of a demurrer, or with special exceptions, in which he prayed the judgment of the court. The cause was continued by defendant, and on the 4th day of April, 1842, came on for hearing on the petition and answer. The demurrer, or exceptions, were overruled by the judge and final judgment rendered for the debt and interest. From this judgment, an appeal is prayed to this court.

The points relied on by the counsel for the appellant as grounds of error in the proceedings and judgment in the court below are:

1. That the petition is insufficient, in not specifying the term at which it was filed.

2. That the instrument in writing declared on by the plaintiff below is styled a "promissory note, or writing obligatory," when he should have declared upon the one or the other.

3. That the note or instrument in writing was not on file, as alleged; nor was a copy of it ever served upon the defendant, as a part of the plaintiff's petition.

4. That the judgment of the court on the defendant's answer should have been respondeat ouster, and not final.

The first ground of demurrer or exception was abandoned by counsel in argument and need not therefore be considered by the court.

---

Note 56.—Cummings v. Jones, p. 530.

In order to maintain motion against executor or administrator, claim must be duly authenticated, presented and rejected. Darly v. Chevalier, Dal., 555; Graham v. Vining, 1 T., 639; Tompkins v. Bennett, 3 T., 36, 49; Harrison v. Knight, 7 T., 47; Hall v. McCormick, 7 T., 269; Millican v. Millican, 13 T., 460; Thompson v. Branch, 35 T., 21; Bank v. Higgins, 72 T., 66;

It will be proper to examine the second and third grounds in connection. The object of our statutes on the subject of pleading is to simplify as much as possible that branch of the proceedings in courts which, by the ingenuity and learning of both common and civil law lawyers and judges, had become so refined in its subleties as to substitute in many instances the shadow for the substance.

Our statute (vide Texas Laws 1836, page 201, section 8) requires, at the hands of a petitioner to a court of justice, only a statement of the names of the parties plaintiff and defendant; a full and fair exposition of his cause of action, and finally the relief which he asks. Applying this statute to the case under consideration, we can not see that the plaintiff below has failed to comply with its requisitions either in spirit or in letter. The date of the "note, or writing obligatory" as it is called in the petition, the time of payment and amount due, are specially set forth, and amply sufficient to notify the defendant of what he was called on to defend; and we entertain no doubt that under the allegations there made the note or writing could have been given and would have been admitted as evidence, even without its being made an exhibit in the case and a part and portion of the petition. The exception made as to its not being on file as a part of the petition, nor served upon the defendant, is clearly matter in abatement, and should have been pleaded as such; and the statute (Texas Laws, volume 4, section 9, page 89) specially provides, that all pleas in abatement shall be under oath or affidavit, which oath or affidavit to said plea nowhere appears on the record.

The joinder in demurrer only admits these points which are properly pleadable in demurrer; and this, being matter in abatement and not of demurrer, can not therefore upon such joinder be deemed as admitted.

The note, then, seems to have been made a part of the petition. A copy of it appears in the record; the clerk below certifies that he issued a true copy of the petition to the sheriff; the sheriff returns it duly executed on the defendant. None of these facts are put in issue by plea properly substantiated, and the court is bound therefore to presume that the note was a part of the petition; and this being ascertained, there no longer exists the slightest ground for the difficulty suggested by the second exception.

As to the fourth point: It is undoubtedly true that on mere dilatory pleas the usual judgment of the court in overruling them is respondeat ouster. But the point in consideration is, whether under our law and practice the court below *had the power and right* to give final judgment on the pleadings as they *then stood?* At the first, or appearance term, after the service of the petition, the defendant filed his answer, thereby saving the necessity and superseding the right of the plaintiff to take

---

Jenkins v. Cain, 72 T., 88; Kiolbassa v. Raley, 1 T. C. A., 165; Perkins v. Traynham, 3 App. C., sec. 78; Ballard v. Murphy, 4 App. C., sec. 171; Lainer v. Taylor (T. C. A.), U. R. C., 1897. Presentation and rejection after suit is filed is not sufficient. Thompson v. Branch, 35 T., 21. And authentication,

his judgment nisi, by default, under the statute. At that term the cause was continued by defendant. We lose sight of the case for two years. In September, 1842, it was called for trial, and the judge properly decided that the answer was bad. Was the defendant not then in default? And should the plaintiff be forced to his rule to plead against him, thereby insuring the farther delay of three days, and in all probability a term, before an answer to the merits could be compelled, or final judgment by default, on failure therein, be taken? We think not; but consider that he was, under the statute, *in default* (volume 4, page 88), and that the judge by the law had the right and power to give final judgment in the case. It does not appear from the record that the defendant ever asked leave of the court to plead over to the merits, or that that leave was refused by the court. He seems to have intrenched himself behind legal objections which the court below and the court here deem untenable, and he must abide the result.

It is therefore considered by the court that there was no error in the judgment of the district court, and that the same be in all things affirmed.

*Affirmed.*

## No. XV.

### ELI LANGFORD v. THE REPUBLIC.

#### (See Note 70.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellant brought his action to obtain a certificate for a league and labor of land; and in the special verdict of the jury it was found that he had obtained a certificate for a league and labor from the proper board of commissioners, and that the same had been rejected by the Investigating Board. That the said Langford had lived on the Attoyac in the now county of Nacogdoches in the years 1826 and 1827, and there had a family (a wife and children), together with some five or six negroes.

It was also proven that the said Langford, in the year 1833, was living in the now county of Red River, where he has ever since resided, but not with the family he had on the Attoyac. He lived with another woman named Eleanor Langford, who has obtained in her own name from the proper authorities a certificate for a league and labor of land; which said woman the said Langford disclaimed as his wife. It was also proven that Mary Langford—the same name of the wife with whom the said Langford lived in 1826 or 1827, under the colonization law of the 24th of March, 1825—obtained from the proper authorities a

presentation, rejection and date of same should be specifically alleged and proved. Darly v. Chevalier, Dal., 555; Graham v. Vining, 1 T., 639; Graham v. Vining, 1 T., 669; Hall v. McCormick, 7 T., 269, 278; Deen v. Duffield, 8 T., 235; Fulton v. Black, 21 T., 424; Wiley v. Pinson, 23 T., 486; Walters v. Prestidge, 30 T., 65; Swift v. Trotti, 52 T., 498; Tolbert v. McBride, 75 T.,

grant for one league of land, and that the said grant was obtained by the said Mary E. Langford in the now county of Nacogdoches, where the said E. Langford lived in 1826 and 1827.

The plaintiff also offered in court a conveyance marked (A) and filed of record in the case; by which he released and conveyed to the government any and all grant or grants of land issued to him or his wife, Mary Langford, under the colonization laws of the State of Coahuila and Texas. These facts being submitted to the court, judgment was rendered in favor of the Republic.

In whatever light the facts of this case are considered, we discover no error in the judgment of the court below. The plaintiff has effectually stripped himself of the qualifications essential to the success of his claim. His pretensions as the head of Mary Langford's family are unsubstantial, as that family has already received the quantum of land to which it was entitled under the colonization laws, and can not now be foisted into the plaintiff's service to enable him to substract a further portion of the public domain.

The attempt of the plaintiff to reconvey all lands received by him or his wife from the government imparts no additional merit to his present application. His wife had no knowledge of the act, and so far as it would operate fraudulently to her prejudice, it would doubtless be regarded nugatory. Had he been entitled by law to any interest in the lands granted to Mary Langford,—which under the circumstances might be doubted,—his release thereof to the government would have been a gratuitous exercise of liberality, without merit and certainly without a corresponding reward. The law makes no provision for releases of this description; and the judicial tribunals of the country are not authorized to award compensation for charities, and forcibly, for illegal purposes, obtruded upon the government.

If the instrument can have any legal operation, it can affect only the interest which the plaintiff may claim, or pretend to claim, in the lands granted to his wife, as the head of the family. If his doubtful right in the said lands has been diminished, he has been estopped by his own act from urging the same. His case presents no such circumstances as to entitle him either to sympathy or relief. The questions in relation to the relative rights of the plaintiff and his wife can not be decided until they are properly brought before the court, and they will be passed without further remark.

The plaintiff can not claim as a single man, because though degraded from the dignity and deprived of the rights of the head of the family by the former authorities, he has not been divorced from the matrimonial bonds.

---

95; Rogers v. Harrison, 1 App. C., sec. 495. Indorsement on claim rejecting it, is prima facie proof of rejection, in absence of plea of non est factum. Tolbert v. McBride, 75 T., 95. These rules are as applicable to claims secured by liens as to unsecured claims. Graham v. Vining, 1 T., 639; Graham v. Vining, 2 T., 433; Danzey v. Swinney, 7 T., 617; Conkrite v. Hart, 10 T., 140, 141; Crossby v. McWillis, 11 T., 94; Duty v. Graham, 12 T., 427, 437; Robert-

No argument arises in favor of the plaintiff from his cohabitation with a woman whom he repudiates as a wife; and even if she were his spouse, his application could not succeed, as she has already obtained a league of land from the government.

We are of opinion, therefore, that the judgment of the court should be affirmed, and it is hereby ordered, adjudged and decreed accordingly, and that the appellant pay all costs of suit.

*Affirmed.*

## No. XVI.

### L. W. TINNIN v. JAMES WEATHERFORD.

*Appeal from Lamar County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted in the District Court of Lamar County by the appellee against the appellant upon a promissory note payable to James Weatherford or order, one day after date, for the sum of $318. Said note was assigned by Weatherford to Wm. Lloyd and by him to Erwin Matthews.

The answer of the defendant alleges, "that the legal as well as equitable interest in said note is not and was not, at the time of the commencement of this suit, in the plaintiff, Weatherword; but it is in one of the indorsees thereof, or some person holding under them, or one of them;" and for further answer sets up "a total failure of consideration."

It appears from the statement of facts that the counsel of the plaintiff below in open court, before the trial of the cause, erased the indorsements on the back of the note sued upon, against the expressed protestation of the defendant's attorney; and that the court, notwithstanding the objection, permitted the erasure.

As this action was instituted since the introduction of the common law, and a part of the answer seeks to *abate* the action, we must be governed by the rules of pleading known to that system and the acts of Congress of force in this Republic. The court here deems it unnecessary to examine into any other cause of error assigned by the appellant than the right of the appellee to prosecute this suit in his own name and the issue made thereupon by the pleadings. The case is, per force, disposed of upon that single point, being the first presented for the consideration of this court.

The denial of the right of the plaintiff to sue in his own name should have been taken advantage of by plea in abatement, *supported by oath or affirmation;* for the reason that this plea does not put in issue the merits of the cause, but tends only to produce delay.

son v. Paul, 16 T., 472, 475; Cunningham v. Taylor, 20 T., 126; Converse v. Sorley, 39 T., 515; Buchanan v. Wagnon, 62 T., 375; Wilson v. Harris, 91 T., 427. It is not necessary to verify and present claim to independent executor before bringing suit. Pleasants v. Davidson, 34 T., 459; Black v. Rockmore, 50 T., 88, 99; Smyth v. Caswell, 65 T., 379; Ellis v. Mabry, 25 T. C. A., 164.

The doctrine is clearly established in 1 Chitty, 481: "Whenever the subject matter of the plea or defense is that the plaintiff can not maintain *any* suit, *at any time,* in respect of the supposed cause of action, such matter must be pleaded in bar; but that which merely defeats the present proceeding, and does not show that the plaintiff is *forever* concluded, should be pleaded in abatement." "A leading distinction between a plea in *abatement* and a plea in *bar* is, that the former must not only point out the plaintiff's error, but must show him how it may be corrected, so as to avoid the same mistake in another suit for the same cause of action." 1 Chitty, 481. "A plea in bar, unlike a plea in abatement, offers matter which is a conclusive answer, or defense to the action upon the merits." 1 Chitty, 556.

The distinctions between pleas in abatement and those in bar are somewhat subtle and refined in their practical application, though in the case before us the distinction seems to be clear enough to have enabled the defendant to file the proper plea, which would put in issue the disability of the plaintiff to sue. That may be done by plea in abatement, under oath or affirmation, as we have before mentioned. How does the case at bar agree with the principle here defined? Was the plea of the defendant merely intended to delay the plaintiff; or would the appellee here be *forever precluded* (as in pleas of bar) by the decision of the court below that he had no right to maintain his present action? Clearly not. Without undertaking to determine whether it was lawful in the plaintiff or his attorney to erase the indorsements in order to maintain the present action in his own name (which is beside the question now under consideration), it may readily be perceived that, had the defendant's plea in abatement been duly supported by oath or affirmation and judgment rendered for him by the court, the plaintiff could have procured a reassignment of the note to him, and have renewed the suit in his own name. Not so if the plea was one in bar.

It may be proper to examine how far the pleadings before us furnish intrinsic evidence that the plea to the disability of the plaintiff here set up was intended to produce delay, and thus to bring it within the definition of a plea in abatement, as laid down by the authorities.

The answer to the merits sets forth a failure of consideration of the note upon which suit is instituted. The original obligee of the note is the plaintiff in the present action, and the most proper person against whom to have established such a defense, it at all meritorious. The door was thus thrown open for the full investigation of the case, and we must infer that the defendant failed to establish his defense upon

If executor allows claim and rejects lien, suit can not be maintained to foreclose lien. Mortgage Co. v. Jackman, 77 T., 622; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368. In such cases the lien must be enforced through probate court and not by an independent action in another court, except where claimant has some legal or equitable right connected with claim, which can not be adjudicated in probate court. Cunningham v. Taylor, 20 T., 126; Cannon v. McDaniel, 46 T., 303; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368; Perkins v. Traynham, 3 App. C., sec. 78. When both claim and lien on land are rejected, only remedy is in district court. Leslie v. Elliott, 26 T. C. A., 578. Presentation to and rejection by

the merits, as the jury found for the plaintiff. How, then, is the defendant to be benefited by showing that the legal or equitable interest is in a third party?

Upon the answer to the plaintiff's petition by the defendant, that the consideration of the note had failed, the plaintiff would not be permitted to rejoin that the real interest was in another, and that he was merely the nominal plaintiff. The defense of the defendant, if just, could avail against the present plaintiff, as well as against the last indorsee.

As we have settled that so much of the answer as relates to the disability of the plaintiff to sue in his own name is a plea in abatement, this case is disposed of by the ninth section of the "act to regulate the proceedings in civil suits," approved February 5, 1840, which enacts, that "no plea in abatement shall be admitted, or received, unless the party offering the same shall prove the truth thereof by oath or affirmation, as the case may be." The plea offered by the defendant was neither sworn to nor affirmed, as the statute requires. It is therefore considered that the judgment of the court below be in all things affirmed.

*Affirmed.*

Judges Morris and Ochiltree say: "We concur in the result of this opinion."

## No. XVII.

### THOMAS C. DOSS v. JOHN R. CRADOCK.

*Appeal from Lamar County.*

OCHILTREE, JUSTICE.—This case comes up from the District Court of Lamar County, unaccompanied with any statement of facts or bill of exceptions. On an examination of the record we can discover no error whatsoever in the judgment of the court below. We therefore are of opinion that the same be in all things affirmed.

*Affirmed.*

## No. XVIII.

### P. W. HERBERT v. THOMAS A. MOORE.

*Appeal from Travis County.*

JONES (WILLIAM J.), JUSTICE.—This case comes up upon a judgment rendered pro forma for the appellee in the court below.

The facts are in substance as follows: That on the night of the 27th of May, 1842, certain horses and mules were stolen from the plantation

---

one of several executors is sufficient to authorize suit. Deen v. Duffield, 8 T., 235. Failure to present claim within one year from appointment of administrator does not defeat action to foreclose lien. Phillips v. Mortgage

and possession of the appellant, in the county of Bastrop; and among them a mule, which is the subject of controversy. On the 30th of May of the same year, two days therafter, the mule was found in the possession of some Indians by the appellee and others (on a hunting excursion), about nine miles from the settlement on Brushy and thirty miles from Austin. They were all retaken after a skirmish, in which the appellee lost his horse.

It was admitted that the property belonged to the appellant at the time it was stolen, and that he demanded it of the appellee soon after its recapture from the Indians; but the restoration was refused upon the alleged ground that the taking and possession by the Indians, for more than *twenty-four hours,* divested the right and ownership of the appellant, and that the recapture vested the property of the mule in the recaptors, of whom the appellee was one.

The right preferred by the appellee to the property in question was based upon that principle of the law of nations known as the rule of post-liminy; which is defined to be the law under which property, if taken by an enemy in time of war, is restored to its former state upon coming again under the power of the nation to which it formerly belonged. This principle was recognized among civilized nations as essentially contributing to mitigate the calamities of war.

It appears, however, that movable property was not entitled by the strict rules of international law to the full benefit of post-liminy, unless retaken from the enemy soon after recapture; and the time necessary to vest an absolute title in the captors and to divest that of the original owner has been fixed at twenty-four hours. In some governments, the municipal laws have relaxed the rigor of this rule of limitation against the restoration of the property of the original owner, in case of recapture by their own citizens or subjects. There was no municipal regulation with us which applied in this case.

We do not consider it necessary to do more than state the principle here set up by the appellee, as in the very threshold a grave and important question is presented to us. We are first called upon to decide whether our courts of justice will apply the doctrines of international law to cases growing out of the predatory disturbances and desultory inroads made upon our frontier inhabitants by the savage and wandering tribes of Indians within the limits of the Republic? If they can not be so applied, a further inquiry into the laws of post-liminy will be unnecessary. It is barely questionable (if they can be so applied)

Co., 90 T., 195. When a lien claim is rejected, claimant may have judgment in district court for establishment of lien as well as debt. Cunningham v. Taylor, 20 T., 126; Perkins v. Sterns, 25 T., 561; George v. Ryon, 94 T., 317 (reversing George v. Ryon (T. C. A.), U. R. C., 1900); Jenkins v. Cain (T. Sup.), U. R. C., 1889. Presenting claim without presenting lien is sufficient presentation, though the better practice is to present both. Danzey v. Swinney, 7 T., 617; Cundiff v. Simpson, 32 T., 144; Cannon v. McDaniel, 46 T., 303; Mortgage Co. v. Jackman, 77 T., 622. Presenting claim alone is not waiver of lien. Ball v. Hill, 48 T., 634; Kempner v. Comer, 73 T., 196; Sutherland v. Elmendorf, 24 T. C. A., 137. In a contest between lien creditors, appellant can not on appeal object for first time that appellee's claim
Dallam—38.                          (593)

---

was not duly authenticated and presented, where administrator is not party to appeal. Watt v. White, 46 T., 338. Holder of vendor's lien note is not required to present claim to administrator of deceased indorser before bringing suit against maker to foreclose lien. Watt v. White, 46 T., 330.